*Ex parte* KOEHLER, Receiver, etc.

*(Circuit Court, D. Oregon.* May 4, 1885.)

1. CORPORATION ACT—VESTED RIGHT THEREUNDER CANNOT BE IMPAIRED OR DESTROYED BY THE LEGISLATURE.
   The power of the legislature to alter or repeal the general incorporation act of Oregon is qualified so that it cannot thereby "impair or destroy any vested corporate right."

2. RIGHT TO A REASONABLE COMPENSATION.
   A railway corporation formed under the general incorporation act of Oregon has a vested right to collect and receive a reasonable compensation for the transportation of persons and property over its road, which the legislature cannot impair or destroy.

3. LEGISLATURE MAY PRESCRIBE RATES OF TRANSPORTATION.

    The legislature may prescribe rates of transportation, and the same will be presumed to be reasonable until the contrary is shown, but the judiciary are the final judges of what is reasonable, or what "impairs" the vested right of the corporation to a reasonable compensation for its services.

4. DISCRIMINATION BY RAILWAY CORPORATIONS.

    The legislature may prohibit any discrimination by a railway corporation between persons or places, unless the same is done to enable it to retain or secure business at a point or place where there are competing lines of transportation, and in such case it may charge less for a long haul than a short one in the same direction, so long as the charge for the latter is reasonable.

    Petition for Instructions.

    *John W. Whalley,* for petitioner.

    DEADY, J.  On January 19, 1885, Mr. Richard Koehler was appointed receiver by this court, in the suit of *Harrison et al.* v. *The Oregon & California Railway Company et al.,* of the road of said company, comprising upwards of 400 miles of track, leading from Portland, via the east side of the Wallamet river, to Ashland, near the southern boundary of this state, with a branch from Albany to Lebanon, and from Portland, via the west side of said river, to Corvallis. On February 20, 1885, the legislative assembly of the state of Oregon passed an act entitled "An act to regulate the transportation of passengers and freight by railroad corporations," which will take effect, by operation of the constitution, on May 21st.  On April 23d the receiver presented a petition to this court, asking for instructions concerning his duty in the management of said property in certain particulars covered or affected by said act, which he says he is advised by his counsel is unconstitutional and void.  The act is very verbose, and unskillfully drawn, but, so far as it relates to the matters about which the receiver seeks direction, it may be briefly stated as follows:

    (1) The fare for the transportation of passengers shall in no case exceed four cents a mile.  (2) All charges for transporting property shall be reasonable; but the rate charged on January 1, 1885, by any corporation shall be its maximum rate.  (3) No "greater or less" compensation shall be charged one person than another "for like and contemporaneous service" in transporting property.  (4) No rebate or drawback shall be allowed in any case, except when property is shipped for points beyond the limits of the state.  (5) Pooling freight or dividing the earnings of "different and competing" railways is prohibited.  (6) No greater rate shall be charged for carrying similar property a short haul than a long one, in the same direction.  Any person who violates any provision of the act is made liable to the person injured in treble damages, and a fine of $1,000.

    So far as the act undertakes to fix the charges for carrying passengers and freight it is claimed to be void, on the ground that it impairs the obligation of the contract of the state with the corporation, to the effect that the latter might prescribe and fix its own tolls and charges, contrary to section 10 of article 1 of the national constitution.  By section 2 of article 9 of the constitution of Oregon it is provided that

"corporations may be formed under general laws. * * * All laws passed pursuant to this section may be altered, amended, or repealed, but not so as to impair or destroy any vested corporate right." The Oregon & California Railway Company was formed under the general corporation act passed pursuant to this constitutional provision on October 14, 1862, which act contains the following section:

"Sec. 36. Every corporation formed under this act for the construction of a railway, as to such road, shall be deemed a common carrier, and shall have power to collect and receive such tolls or freights for transportation of persons or property thereon as it may prescribe." Laws Or. 532.

In *Wells, Fargo & Co.* v. *Oregon Ry. & Nav. Co.* 8 Sawy. 614, S. C. 15 Fed. Rep. 561, this court held that this section only authorized the corporation to charge a reasonable compensation for the transportation of persons and property; but that so far it constituted a contract between the state and the corporation, the obligation of which it could not impair by any subsequent legislation. This conclusion, of course, implies that the right or franchise of the corporation to demand and have a reasonable compensation for the carriage of persons and property is a "vested" one, within the meaning of the constitution of the state, and therefore cannot be impaired or destroyed by the legislature under the power to alter, amend, or repeal the general corporation act.

But it is admitted that the right of the corporation to fix its rates and fares is not absolute, and that, if necessary, the legislature may limit the same to what is reasonable. Nor, in my judgment, is the power of the legislature over the subject absolute. It cannot require the corporation to accept less than a reasonable compensation for its services. And while the presumption may be, and doubtless is, that any rate which the legislature may prescribe is a reasonable one, such presumption is not conclusive, and may be overcome by evidence to the contrary in any case when the question arises before the courts.

I am aware that in what are called the *"Granger Cases,"* 94 U. S. 155–187, it was practically held that the action of the legislature in fixing the maximum rate of compensation for certain railways was conclusive of the question, and could only be reviewed or reversed at the polls. But in none of these cases, as I read them, was the power of alteration or repeal reserved to the state, qualified as in Oregon, so that it could not be used "to impair or destroy any vested corporate right." And the contention of the corporations in those cases was that, although the state had reserved to itself the right of repeal without qualification, still the court ought in justice and right to so limit its operation as not to allow it to interfere with vested rights, as was suggested by Mr. Chief Justice Shaw, in *Com.* v. *Essex Co.* 13 Gray, 239. But the court refused to do so, and held in effect that, under the unqualified power of appeal reserved to the state, the legislature might deal with the subject as it pleased, even if it deprived the corporation of all right to compensation for services in the future, and

there was no appeal from its action except to the polls; and that, if the business and property of the shareholders was thereby destroyed or rendered valueless, they must blame themselves for engaging in a corporate enterprise under such precarious conditions.

Admitting, then, that the legislative assembly has the power to prescribe a maximum rate for the carriage of persons and property, and that such rate is presumed to be reasonable until the contrary is shown, I proceed briefly to consider the matters concerning which the receiver desires instruction.

And first as to the provision fixing the rates for carrying passengers: There is no sufficient showing that the rate prescribed is not reasonable. The only distinct allegation in the petition to the contrary is that "the actual cost" of carrying "passengers on many portions of the road is in excess of the maximum rates allowed" therefor; but what the effect is upon the receipts for passenger traffic on the road, as a whole, does not appear, and probably cannot be definitely ascertained except by experience. It is commonly understood that now, and prior to the passage of the act, the fare between Portland and Albany, Lebanon and Corvallis, was four and one-half cents a mile; between Albany and Roseburg, six cents; and between Roseburg and Ashland, seven cents; and on mileage tickets between Portland and Oregon City, two cents a mile; between Portland and Albany and Lebanon, three cents; and all other points, four cents a mile.

Owing to the increased cost of operation and the limited population and travel, it is probably true that a rate which would be reasonable in the Wallamet valley would not pay expenses to the south of it. But if the legislature, in fixing the rate, think proper to make it uniform over the whole line, so as to make the more wealthy and populous portion of the state contribute to the locomotion of the inhabitants of the southern portion thereof, I am not prepared to say it has not the power to do so, or that the corporation can be heard to object thereto, so long, at least, as the compensation received by it for the carriage of passengers over its road, as a whole, is reasonable. While the road remains in the hands of a receiver of this court, it is not desirable that there should be any conflict between its management and the policy of the state, except when the latter is clearly contrary to the legal right and substantial interest of the road. For the present the receiver will be instructed to operate the road in this respect in subordination to the act, and if experience shall prove that the rate is insufficient to yield the road, as a whole, a reasonable compensation, the matter may be further considered.

As to the matter of long and short hauls, the question, although *prima facie* one of discrimination, directly involves the right to a reasonable compensation. I assume that the state has the power to prevent a railway company from discriminating between persons and places for the sake of putting one up or another down, or any other reason than the real exigencies of its business. Such discrimination,

it seems to me, is a wanton injustice, and may therefore be prohibited. It violates the fundamental maxim, which in effect forbids anyone to so use his property as to injure another, *sic utere tuo ut alienum non lædas.* The provisions of the act that I have condensed in paragraphs 3, 4, and 6 aforesaid are intended to prevent this practice. But where the discrimination is between places only, and is the result of competition with other lines or means of transportation, the case, I think, is different. For instance, the act prescribes a reasonable rate for carrying freight between Corvallis and Portland, or from either to points intermediate thereto. But Corvallis is on the river, and has the advantage of water transportation for some months in the year. The carriage of goods by water usually costs less than by land, and as water-craft are allowed to carry at a rate less than the maximum fixed for the railway, they will get all the freight from this point unless the latter is allowed to compete for it. But if, to do this, it must adopt the water rate for all the points intermediate between Portland and Corvallis, where there is no such competition, it is, in effect, required to carry freight to and from such points at a less rate than that which the legislature has declared to be reasonable, or else give up the business at Corvallis altogether. And the same result would follow as to Salem and other points on the east and west side lines, where there is convenient access to water transportation.

If the legislature cannot require a railway corporation, formed under the laws of the state, to carry freight for nothing, or at any less rate than a reasonable one, then it necessarily follows that this provision of the act cannot be enforced so far as to prevent the railway from competing with the water-craft at Corvallis and other similarly situated points, even if in so doing they are compelled to charge less for a long haul than a short one in the same direction. It is not the fault or contrivance of the railway that compels this discrimination, but it is the necessary result of circumstances altogether beyond its control. It is not done wantonly for the purpose of putting the one place up or the other down, but only to maintain its business against rival and competing lines of transportation. In other words, the matter, so far as the railway is concerned, resolves itself into a choice of evils. It must either compete with the boats during the season of water transportation, and carry freight below what the legislature has declared to be a reasonable rate, or abandon the field, and let its road go to rust. Nor can the shipper at the non-competing point, or over the short haul complain, so long as his goods are carried at a reasonable rate. It is not the fault of the railway that the shipper who does business at a competing point has the advantage of him. It is a natural advantage which he must submit to, unless the legislature will undertake to equalize the matter by prohibiting the carriage of goods by water for a less rate than by rail; and when this is done, the inequalities of distance as well as place may also be overcome by requiring goods to pay the same rate over a short haul as a long one,

and then the shipper at Ashland will be as near the market as any one.

As to the interchange of freights with the Oregonian Railway Company, the case stated in the petition does not seem to be one of pooling freights or dividing earnings, but rather a case of a long haul at a less rate than a short one in the same direction, to meet the contingency of river competition at Ray's or Fulquartz's landing. Pooling freights or dividing earnings is resorted to by rival and competing lines of railway as a means of avoiding the cutting of rates, which, if persisted in, must result in corporate suicide. It is not apparent how a division of the earnings of two such roads can concern or affect the public, so long as the rate of transportation on them is reasonable. But assuming, what is not admitted, that the legislature has the power to prohibit the practice, the Oregon & California and the Oregonian railways do not appear to be competing ones, but rather supporting ones,—the latter serving as a feeder, branch, or continuation of the former. Nor is the arrangement between them a pooling one, but simply one by which each carries for the other at a fixed price, per ton per mile. There is nothing in the arrangement which prevents the receiver from doing a "like service" for any one else on the same terms, and I have no doubt he would be glad to. The receiver is instructed:

(1) To carry passengers at a rate not exceeding four cents a mile on any portion of the road, and for as much less on the whole or any part thereof as he may think advisable; (2) to charge no more for the carriage of goods than the maximum allowed by the act, nor no more for a short haul than a long one in the same direction, except to and from points where the rate obtainable is affected by water transportation, in which case he may carry at as low a rate as the water-craft do, without reference to the length of the haul; (3) to continue the interchange of freight with the Oregonian railway on the footing of the present arrangement as long as he may think advisable; and (4) in the discharge of his duties, to otherwise obey and conform to the provisions of the act.

The foregoing contains my present impression of the rights and duties of the receiver in the premises. But being *ex parte*, of course, it is given subject to further consideration and correction. The receiver is instructed to obey the act for the time being, except in the case of a long haul to or from a point affected by water transportation. If any one considers himself aggrieved by the action of the receiver in this particular, on application to this court leave will be given to bring an action herein against him for damages, so that the matter may be regularly and formally heard and determined.

As the question involved—"has the corporation a contract with the state for the right to demand and have a reasonable compensation for the carriage of goods?"—is a federal one, it is proper that the action should be brought in this court.