## STATE *v.* SOUTHERN PACIFIC COMPANY.

[ S. C. 31 Pac. Rep. 960.]

1. REMOVAL OF CAUSES — PETITION.—When an action has been commenced in a state court of competent jurisdiction, and a petition is filed for removal to the federal courts, the state court is not bound to surrender its jurisdiction unless the petition shows on its face that the case involves the construction of the constitution of the United States, or of the laws thereof.

2. IDEM — FEDERAL QUESTION.—A petition for removal from a state to a federal court, showing that the petitioner is a corporation organized under the laws of another state, that its duties and functions do not depend upon any act of congress, and that the question involved is the settling of tariff rates promulgated by the state railroad commission, does not show any ground for removal.

3. OBLIGATION OF CONTRACTS — DEADY'S CODE, § 36, p. 532.—Deady's Code, § 36, p. 532, which provides that any railroad company incorporated under the law as it then existed should "have the power to collect such tolls for the transportation of persons and property as it may prescribe," did not, as between the state and a railroad company organized during the time that law was in force, constitute a contract the obligation of

which could not be impaired by subsequent legislation. *Ex parte Koehler,* 11 Saw. 37 ( 23 Fed. Rep. 529), approved.

4. RAILROAD RATES — BASIS OF COMPUTATION BY COMMISSION.— The actual value of a railroad is the basis on which a just and fair return must be allowed by the railroad commission under the act of 1891 (Session Laws 1891, 124), and not the bonded indebtedness, capital stock, and current indebtedness, unless it be shown that the value of the road equalled such outstanding indebtedness.

Marion County: REUBEN P. BOISE, Judge.

Suit in equity under the statute of 1891 (Laws 1891, 23), by the state of Oregon, on the relation of Geo. W. Colvig, Robert Clow, and A. N. Hamilton, composing the board of railroad commissioners, and Frank J. Miller, clerk of said board, to compel the Southern Pacific Company to adopt a schedule of rates promulgated by said board for use on the railroad lines of the defendant in Oregon. The company had refused to adopt the rates, on the ground that they would not yield a fair and just return on the value of the railroad lines, their appurtenances and equipments. The case was referred to Wm. H. Holmes, Esq., who reported that the rates were reasonable for the character of the services rendered by the defendant to its patrons. The report was confirmed by the circuit court, and a decree entered accordingly, from which the defendant appeals. Affirmed.

*William D. Fenton (Bronaugh, McArthur & Bronaugh* on the brief), for Appellant.

*Geo. E. Chamberlain,* attorney-general, *Geo. W. Colvig,* and *D'Arcy & Bingham (Jas. McCain,* district attorney, on the brief), for Respondent.

Statement by the court.—This suit was brought to enforce a schedule of rates adopted by the board of railroad commissioners for use on the railroad lines of the defendant in Oregon, which it had refused to recognize or adopt on the ground that the same would not render a fair and just return on the value of its railroad lines, appurtenances, and equipments. The statute provides for

the election of three persons by the legislative assembly, to constitute the board of railroad commissioners of this state, who shall take the oath prescribed and give bonds before entering upon the discharge of their duties; and among other things, the board shall examine into the condition and management of all matters concerning the business of railroads, so far as the same affect or relate to the public interests, etc. It also provided that any person, firm, or corporation complaining of anything done, or omitted to be done, by any common carrier subject to the provisions of the statute, may apply to the board by petition, briefly stating the facts, etc.; and it is made the duty of the board to investigate the same, and to make a report in writing, etc.; and if the carrier refuses to obey any lawful order or requirement of the board, then it is made the duty of the commission to enter complaint in the circuit court of the state, etc., for the enforcement of the order. Provision is made for giving notice to the company, for taking testimony, and the issuance of writs of injunction and other process for compelling obedience, etc. And the statute further provides that all persons or corporations who own or operate any railroad in this state shall furnish the board of railroad commissioners with a schedule of charges for transportation of persons and property, and it is made the duty of said board, and it is empowered, to revise such schedule, and to determine whether or not, and in what respect, such charges are more than a reasonable and fair compensation for the services to be rendered, etc.; and when said schedule of charges is corrected as approved by the board, it shall then append a certificate of its approval to said tariff charges, etc.

It is further provided that it shall be the duty of the commission, in revising and establishing any and every tariff of charges, to take into consideration the character and value of the services to be performed, and the entire business of such railroad, together with its entire earnings from passenger and other traffic, and to so revise

said tariff as to allow a fair and just return on the value
of its railroad, its appurtenances and equipments, etc.
And if any railroad shall charge, demand, or receive any
greater amount for the transportation of persons and
property than the rates approved and fixed by the com-
mission, then the board is empowered and authorized, in
the name of the state of Oregon, to commence a suit for
the purpose of requiring such common carrier to comply
with the tariff charges so approved and fixed.   Such
tariff charges so approved shall be received by all courts
in the state as *prima facie* evidence of the fact that the
same are just and reasonable; and if it be made to appear
on such hearing that such tariff should be enforced, it
shall be lawful for such court to issue a writ of injunc-
tion, or other mandatory process, for the purpose of com-
pelling such common carrier to put in force and effect
the tariff of rates, fares, charges, or classification so
approved by the board.   And it is also provided that
either party may appeal to the supreme court under the
same regulations as now provided by law, and upon such
appeal it is made the duty of the supreme court to hear
and decide all questions of law and fact.

The record discloses that by virtue of these provisions,
among other things, the plaintiff, through said board,
made and published an order commanding the defendant
to file with said board complete schedules of the rates
and charges for transporting persons and property over
its lines in the state of Oregon in force and in use on
said lines before the twentieth day of May, 1891, which
order was duly served on the defendant; that in pursu-
ance of said order the defendant filed the schedule of
rates and charges in use on its lines; that on the twelfth
day of August, 1891, the plaintiff, by said board, after
due notice to the defendant, found that the rates so filed
were unjust and unreasonable for the services rendered,
and then and there revised and amended the same by
making and publishing a revised schedule of rates for
transporting the commodities covered by said rates over

its lines in this state, and then and there appended the certificate of approval of said board to said revised schedule of rates so amended, and duly notified the defendant of such revision, and by order commanded the defendant to put the same in force and effect on the said lines; and that the defendant utterly failed and refused to put into force and effect on any of the said lines such revised rules, or any part thereof, and failed and refused to desist and cease using its old rates, etc. Whereupon the plaintiff filed its bill of complaint asking the court to decree that the rates and schedules of the defendant for transporting the commodities named in the exhibits thereto attached, and now in force on said lines, are unjust and unreasonable, and more than a fair or just remuneration for the services rendered or to be rendered, etc.; and that the said revised rates and schedules, as exhibits thereto, are just and reasonable in all things, and that the defendant be perpetually enjoined from using any other or different rates on any of its lines than those named, etc.

After the complaint was filed and served, the defendant filed its petition and bond for removal of said cause to the United States court for the district of Oregon, on the ground that the decision of the controversy between the plaintiff and defendant necessarily involved questions arising under the constitution and laws of the United States, which the court refused to grant. Thereupon the defendant demurred to the complaint on the ground (1) that the court had no jurisdiction of the subject matter of the suit; (2) that the court had no jurisdiction of the person of the defendant; (3) that the facts stated and recorded in the case show that they do not constitute a cause of suit which is within the jurisdiction of the court to hear and determine. The court overruled the demurrer, and the defendant thereupon filed its answer, denying each and every allegation in the complaint, with certain exceptions, and set up several defenses as disclosed by the record, to which further reference is not

necessary. On motion of the plaintiff, these separate defenses were stricken out, except the one next to the last, to which the plaintiff replied, denying specifically each and every allegation therein. The cause being at issue, was referred to Hon. Wm. H. Holmes to report the facts and law, and he, after hearing the evidence of the parties, reported his findings of fact and conclusions of law therein in favor of the plaintiff. Upon the hearing of the report, the defendant filed its exceptions and moved to set it aside, which, after argument, the court overruled and entered a decree in all things enforcing said report and findings, and requiring the defendant to put in force the rates therein found to be just and reasonable. From the decree of the court so rendered, the defendant has taken this appeal.

PER CURIAM.—(1) The first contention for the defendant is, that the court below erred in refusing to allow the petition of the defendant for removal of the suit to the federal court, and in maintaining jurisdiction of the cause for trial and determination. The main ground upon which the defendant basis its claim for removal is, that the decision of the controversy between the plaintiff and defendant necessarily involves questions arising under the constitution of the United States and amendments thereto, and laws of congress. · The particulars in which the defendant claims that such questions will necessarily arise are fully set out in the petition, but the particular one is this: That the defendant's road from Portland to the state line is subject only to national legislation and control, by virtue of the act of congress of July 25, 1866, and therefore not subject to state legislation. The act of congress referred to is an act granting lands to aid in the construction of a railroad and a telegraph line from the Central Pacific Railroad in California to Portland, in Oregon, and among other things, provides that the company entitled to the benefit of the act "shall be governed by the provisions of the general railroad

and telegraph laws of the respective states, as to the con-struction and management of such railroad and telegraph line hereinafter authorized, in all matters not provided for in this act." By virtue of this act the defendant claims that it is a federal agent, and as such is entitled to a removal of the suit to the federal court.

The laws of this state clearly point out the duties of the railroad commissioners, and in pursuance of its man-dates, and in the discharge of such duties, they have revised and modified, as in their judgment seemed best, the schedule of rates furnished them by the defendant, which modified rates it has refused to put in force, leav-ing no other alternative to the board than to commence a suit in the proper court, as it is empowered to do, for the purpose of obtaining a decree requiring the defendant to comply with the tariff charges approved and fixed by it. In such case, it does not seem to us that the federal court could have original jurisdiction of the subject mat-ter of the suit. Certainly it is not the tribunal specified, or to which the plaintiff could successfully appeal, to en-force the acts of the railroad commissioners done in pursuance of the laws to regulate railroads within its limits. It was contended, too, that when the defendant filed its petition and bond for removal, by virtue of the act of congress set out in the petition and already re-ferred to, the case was immediately within the jurisdic-tion of the federal court; that is, that the mere filing of the petition and bond for removal ousted the state court of jurisdiction, and that no order was necessary for that purpose. We think that the state court is not bound to surrender its jurisdiction unless the petition shows on its face a case the decision of which depends upon the con-struction of the constitution of the United States, or the laws thereof.

2. The question now arises, did the petition show on its face such a state of facts as would have warranted the court in ordering a removal of the cause? The defend-ant was incorporated under the laws of Kentucky, and is

doing business in this state,—not as a federal agent or pursuant to any act of congress, but as a corporation of another state,—under the conditions imposed by an act of the legislature of this state.   It exists entirely independent of any act of congress, and its relations to the state and to the general government have not been changed by virtue of the land grants given to its lessor mentioned in its petition for removal.   It does not depend upon any act of congress for its powers, nor does it look to any such act to guide it in the discharge of its corporate functions and duties.   Nor can such a corporation as the defendant be classed, by virtue of such land grant by congress to its lessor, among those corporations that not only "derive their existence, but their powers, their franchises, their duties, and a large portion of their resources, from such acts, and by virtue thereof sustain important relations to the government of the United States": *Pacific Railroad Cases*, 115 U. S. 1 (5 Sup. Ct. Rep. 1113).   When the charter is conferred upon the corporation by an act of congress, as was the case in *Osborne* v. *Bank of the United States*, 9 Wheat. 817, "the charter of incorporation not only creates it, but gives it every faculty which it possesses.   *   *   *   It is not only itself the mere creature of the law, but all its functions and all its rights are dependent upon some law."   These rights and franchises are given by its charter, and that charter is the law of the United States.   "Can it then," as Chief Justice MARSHALL observed, "have a case which does not arise literally as well as substantially under the law?"   And in *Cohens* v. *Virginia*, 6 Wheat. 379, the same distinguished jurist has said that a case "may truly be said to arise under the constitution and laws of the United States whenever its correct decision depends upon the construction of either."   "Unless the very right of the party," as Mr. Justice DEADY said, "springs out of, or has its origin in, such law," a case does not arise under it within the scope of that jurisdiction: *Dowell* v. *Griswold*, 5 Saw. 43.   Whether a suit is one which arises

under the constitution or laws of the United States depends upon the question involved. "If from these it appears," says Chief Justice WAITE, "that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the constitution and laws of the United States": *Starin* v. *New York*, 115 U. S. 257. From these decisions, and others which might be cited, it is clear that the claim or right of removal must involve a real controversy in the suit arising out of some act of congress.

How the proceedings in the case at bar, instituted to compel the defendant to change its rate of charges in conformity with the rates revised by the railroad commission, can be affected by any construction of the act of congress granting land to aid its lessor in the construction of the road, is difficult to understand or demonstrate. What right, or privilege, or claim, or defense, in whole or in part, can the defendant set up or assert in this proceeding, that grows out of any legislation of congress or in any way involves such legislation? The gravamen of the suit is to adjust the rates of tariff charges under the laws of the state, and, in our judgment, in no respect can be affected by a construction of the land grant, or involve any right, private or public, of the defendant under that grant.

3.   It is also contended by defendant that under section 36, page 532, Deady's Code, in force at the time defendant's lessor was incorporated, providing that any railroad company incorporated under the law as it then existed "shall have the power to collect and receive such tolls or freight for transportation of persons and property thereon as it may prescribe," the state cannot of itself, either by legislation fixing maximum rates or by a commission, deprive the defendant of the right to fix freights and fares, because such provision constituted a contract between the state and defendant the obligation of which

could not be impaired by subsequent legislation.   It is sufficient to say that this question was decided adversely to defendant's contention, and, we think, properly, by the circuit court of the United States in *Wells, Fargo & Co.* v. *Or. Ry. & Nav. Co.* 8 Saw. 600 (15 Fed. Rep. 561), and *Ex parte Koehler*, 11 Saw. 37 (23 Fed. Rep. 529).

4.   The schedule of rates prepared by the commission, and sought to be enforced by this suit, was not arbitrarily adopted, but was the result of careful and painstaking labor on the part of the commissioners, after giving the defendant an opportunity to be heard, and after special request to it to furnish for the use of the commission an estimate of the value of its road, appurtenances and equipments, which, however, the company declined and neglected to do.   These rates are by law made *prima facie* evidence in all the courts of this state, "of the fact that the same are just and reasonable"; and before the company can be excused from putting them in force, it must show by a preponderance of the evidence that such rates do not allow it "a fair and just return on the value of the road, appurtenances and equipments," and this, we think, it has failed to do.   The evidence of the defendant is not directed to showing the actual value of the road and equipments, but rather to showing the amount of its bonded indebtedness, capital stock and current indebtedness, and this character of evidence is not sufficient to overcome the *prima facie* reasonableness of the commissioners' rates.   It is a matter of common knowledge that the bonded indebtedness, capital stock and current indebtedness of railroad companies is in many instances largely in excess of the actual value of the road, and it would be unjust and unfair to adopt such data as a basis upon which to ascertain the reasonableness of tariff charges, without proof that the value of the road equalled such outstanding liabilities.   It is the actual value of the road, appurtenances and equipments upon which a just and fair return must be allowed under the commission act of this state, and this value is a matter peculiarly within

XXIII. Or.—28.

the knowledge of the defendant, and for this reason the law has wisely cast the burden of proof on it of showing the unreasonableness of the commission rates.

The evidence in this case is voluminous, and need not be detailed here; but it is sufficient to say that it has received our careful consideration, and inasmuch as we are of the opinion that the defendant has failed to overcome the *prima facie* case in favor of the state, the tariff charges as prescribed by the commission should be put in force over the lines of the defendant in this state.

We conclude that the trial court committed no error, and that its decree must therefore be affirmed.