ATLANTIC COAST LINE RAILROAD COMPANY *v.* FLORIDA EX REL. ELLIS, ATTORNEY GENERAL.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 9. Argued March 2, 5, 1906.—Decided December 3, 1906.

Where the state law provides that rates established by the railroad commission are to be taken in all courts as *prima facie* just and reasonable, and there is nothing in the record from which a reasonable deduction can be made as to the cost of transportation, or the amount transported of the single article in regard to which an intrastate rate has been established and complained of, or how that rate will affect the income of the railroad company, this court will not disturb the finding of the highest court of the State that the rate was reasonable, and hold that it amounted to a deprivation of the company's property without due process of law. 48 Florida, 146, affirmed.

On December 17, 1903, the railroad commission of the State of Florida, after notice and a hearing, made an order:

"That the rate to be charged by all the railroads and common carriers doing business wholly or in part within the State of Florida, for the transportation of phosphate from points in the State to points within the State, shall not exceed one cent per ton per mile.

"Provided, however, that where the rate of one cent per ton per mile will raise any rate now in operation, that said rate of one cent per ton per mile shall not be effective, but the rate as now charged by the railroad companies is hereby adopted by the Railroad Commissioners as their rate between such points.

"It is, therefore, ordered, that where a shipment of phosphate shall pass over two or more railroads in reaching its destination within the State of Florida, the initial line may charge one and a half cents per ton per mile for the first ten miles which said phosphate shall be hauled."

The railroad company in error, which was a party to the

proceedings before the commission, not complying with this order, application was made on March 7, 1904, to the Supreme Court of the State for a writ of mandamus to compel compliance, and on October. 19, 1904, the peremptory writ was ordered by that court, as prayed for. 48 Florida, 146. Thereupon the railroad company sued out this writ of error.

No special findings of fact were made by the Supreme Court but in its opinion it said:

"There is a total lack of positive proof that the commi: ion rate is materially less than that now charged. The company proves merely that its books do not show that any local phosphate had been carried by it, but does not show what rate it charges on the interstate shipments of phosphate. There is some showing of the expensiveness of handling phosphate for foreign shipments, much of which would not enter into the local or intrastate business, should such be carried, but nothing is shown from which this court can say that the rate fixed by the commission is unreasonable. The evidence offered might tend to show that the rate is unnecessary or that it is speculative, but such questions the court is not called upon to decide.

\* \* \* \* \* \* \* \*

"Taking the figures from the brief filed by the respondent, we find that the local business alone produces a net earning of at least 3% on the total value of the road in Florida, charging against such income the whole of the taxes. While a State is not permitted to offset local business against interstate business, and to justify low local rates by reason of the profitableness of the latter, yet the interstate and foreign business may and should be considered in determining the proportion of the value of the property of the company assignable to local business. There is no proper showing of the interstate and foreign business, so that we may determine on what fraction of the whole value of the property in Florida the company might be entitled to earn an income from local business; there is, however, a showing that the interstate and foreign business is large and, on a proper showing and a proper pro-

portioning of the service between domestic and foreign business, this percentage of net income would be largely increased.

\* \* \* \* \* \* \* \*

"Under the burden of proof cast by the law upon the respondent, we find that the rate in question is not unreasonable."

*Mr. John E. Hartridge*, for plaintiff in error: [1]

The Federal question involved may be presented in two several ways, and is properly divided: First. Whether the plaintiff in error is earning its operating expenses, taxes, and a reasonable return on the money invested. Second. Whether a reasonable rate is not understood to be a rate reasonable as an entirety? In other words, if a rate is reasonable for a long haul and unreasonable for a short haul, is not the rate as an entirety an unreasonable rate? The question involved is, whether plaintiff in error in the operation of that portion of its line situated entirely in Florida has a right to earn sufficient revenue from the state passenger and freight business done upon said division, to pay operating expenses, taxes, and a reasonable return upon its investment?

The Florida railroad commission, in fixing future rates, does not act as a court. The power to fix future rates is legislative and not judicial. *I. C. C. v. C. N. O. & T. P. Ry.*, 167 U. S. 499.

The Florida railroad commission, in fixing future rates, acts in a legislative capacity. Whatever judicial power it may have in regard to other matters, it does not act judicially when it assumes to fix rates. *W. U. T. Co. v. Myatt*, 98 Fed. Rep. 341.

Even if the legislature of Florida had denominated the commission a court, it would not be conclusive as to the nature of the jurisdiction and powers conferred upon it. That question is not to be determined by any terminology employed in the act.

---

[1] See also argument in Nos. 10, 11, argued simultaneously herewith, *post*, p. 262.

Compensation implies three things—payment of the cost of service, interest on bonds, and then some dividend. *Southern Pac. Co.* v. *Railroad Commissioners*, 78 Fed. Rep. 262.

An ordinance has been held void under the Fourteenth Amendment, as depriving the company of its property without due process of law which requires a street railroad company to reduce its rates, "when the road was only making yearly net earnings of 3.3 per cent., to 4.5 per cent. on its *bona fide* investment, and paying 5 per cent. interest on its bonds, in a city where the current rate of interest on first mortgage real estate security is 6 per cent." *Milwaukee El. Ry.* v. *Milwaukee*, 87 Fed. Rep. 577.

*Mr. J. M. Barrs*, with whom *Mr. W. H. Ellis*, Attorney General of the State of Florida, was on the brief, for defendant in error.[1]

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

Passing all matters of a local nature, in respect to which the decision of the state court is final, the Federal question is whether the order of the railroad commission, sustained by the Supreme Court of the State, deprived the company of its property without due process of law or denied to it the equal protection of the law. The testimony taken before the commission was not preserved, but by the law of the State the rates established by such commission are to be taken in all courts as *prima facie* just and reasonable. Laws Florida, 1899, pp. 76, 82, Chap. 4700, Sec. 8. We start, therefore, with the presumption in favor of the order.

The testimony on the hearing of the application in the Supreme Court is, however, in the record. That court, in the exercise of its original jurisdiction of mandamus cases, determines questions of fact as well as of law. *State ex rel.* v. *County Commissioners of Suwannee County*, 21 Florida, 1.

---

[1] For abstract of argument, see p. 266, *post.*

While it did not 'make any distinct findings of fact, yet its deductions from the testimony are clearly indicated by the quotations from its opinion. If it be said that in the absence of special findings of fact it is the duty of this court to examine the testimony upon which the judgment was entered, it is very clear that there was no sufficient evidence presented to that court to justify a refusal to enforce the order of the railroad commission.

And here we face this situation: The order of the commission was not operative upon all local rates but only fixed the rate on a single article, to wit, phosphate. There is no evidence of the amount of phosphates carried locally; neither is it shown how much a change in the rate of carrying them will affect the income, nor how much the rate fixed by the railroads for carrying phosphate has been changed by the order of the commission. There is testimony tending to show the gross income from all local freights and the value of the railroad property, and also certain difficulties in the way of transporting phosphates owing to the lack of facilities at the terminals. But there is nothing from which we can determine the cost of such transportation. We are aware of the difficulty which attends proof of the cost of transporting a single article, and in order to determine the reasonableness of a rate prescribed it may sometimes be necessary to accept as a basis the average rate of all transportation per ton per mile. We shall not attempt to indicate to what extent or in what cases the inquiry must be special and limited. It is enough for the present to hold that there is in the record nothing from which a reasonable deduction can be made as to the cost of transportation, the amount of phosphates transported, or the effect which the rate established by the commission will have upon the income. Under these circumstances it is impossible to hold that there was error in the conclusions reached by the Supreme Court of the State of Florida, and its judgment is

*Affirmed.*