## SOUTHERN PAC. CO. et al. v. CAMPBELL et al.

(Circuit Court, D. Oregon. July 3, 1911.)

No. 3,675.

1. CARRIERS (§ 18*)—RATES—REGULATION BY RAILROAD COMMISSIONERS.

A complaint, seeking to enjoin rates fixed by the railroad commissioners of a state, should state facts which show that such rates do not afford a fair return on the value of the complainant's property devoted to the particular use, and, in the absence of such allegations, the presumption of law will prevail that the rates made are fair.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 18.*]

2. PLEADING (§ 8*)—CONCLUSIONS OF LAW—CHARGES—REGULATION BY RAILROAD COMMISSIONERS—INJUNCTION.

A complaint to enjoin rates fixed by the railroad commissioners of a state, alleging, in general terms, that the local rates of the company affected by the order were reasonable and just, and as low as the situation of the parties and the competitive condition of the business would permit, and that the said compensation charged on existing tariffs is reasonable and just and affords but slight compensation above the costs of the service, and that the reductions attempted to be made by the commission involve rates, which, if enforced, would deprive complainant of a large sum of annual revenue, and compel it to give the use of its property without reasonable or just compensation, and compel it to increase other rates on traffic not affected by the order, thus compelling discrimination, and that the order was unreasonable, unjust, and arbitrary, and that the rates sought to be prescribed are confiscatory, was insufficient as stating conclusions of law not supported by averments of fact.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½; Dec. Dig. § 8.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Bill by the Southern Pacific Company and another against Thos. K. Campbell and others, constituting the Railroad Commission of Oregon, and A. M. Crawford, the Attorney General of the State of Oregon. Demurrer to bill sustained.

W. D. Fenton, Jas. E. Fenton, and Ben C. Dey, for complainants. J. N. Teal and Clyde B. Aitchison, for defendants.

BEAN, District Judge. This suit has been submitted on a demurrer to a bill to enjoin the enforcement of an order of the State Railroad Commission fixing certain class rates from Portland south over the lines for the Oregon & California Railroad Company, operated by the Southern Pacific Company, as lessee.

In September, 1910, the commission upon due investigation, and after a hearing by the complainant company, found that certain enumerated class rates on freight from Portland south to various stations in Oregon, then in force on complainant's lines, were unjust, unreasonable, and excessive, and unjustly discriminatory as against the several stations and localities and as between various classes of commodities, and, by an order duly made and entered, fixed rates decided and found by it to be just, reasonable, and nondiscriminatory, in lieu thereof, expressly providing in the order that it should not be construed to apply to interstate commerce. It is alleged that the rates fixed by the commission, if enforced, will reduce the receipts of the complainant company, local and interstate, which for the year 1909 amounted to $7,104,081, by the sum of $276,931.80; but it is admitted by its counsel that this was an error in the footing, and that the actual estimated reduction will be $156,072.48 annually.

Without referring to the allegations of the complaint at length, the objections made to the order sought to be enjoined may be summarized as follows:

First. The act of the Legislature creating the railroad commission is unconstitutional and void: (a) Because of the excessive penalties and burdens imposed for refusal to obey the orders of the commission; (b) because its provisions are not uniform and equal in their application; (c) because it confers upon the commission legislative, executive, and judicial powers; (d) because rate making is a legislative function, and a rate cannot be made to take effect upon the order of a subordinate commission; (e) because it requires a railroad company aggrieved by an order of the commission to prosecute any suit to review the same in the state courts; (f) because it provides for a judicial review of the orders of the commission.

Second. The order in question is violative of the Constitution of the United States because it directly and materially affects interstate commerce, since the rate on interstate traffic over complainant's lines in Oregon is made up by the through rate to Portland with the local rate out.

Third. The law under which the Oregon & California Railroad Company was incorporated provides that a corporation organized thereunder "shall have power to collect and receive such tolls and freights for transportation of persons and property as it may pre-

scribe," and thus deprives the state of the power to fix rates for transportation of freight or passengers.

Fourth. The rates fixed by the commission and sought to be enjoined in this suit are so unreasonably low as to amount to a confiscation pro tanto of complainant's property.

Fifth. The order of the commission was based upon an arbitrary approval of class 1 of rates then in force on complainant's line and an arbitrary spread between such class and other classes without any reference to the distance the traffic was to be carried, the character or nature of the service to be performed, or the compensation that should be paid therefor.

Seventh. That the rates prescribed by the commission are unreasonable, and this court should review the same under the provisions of the commission act.

These several questions have been elaborately argued orally and by printed briefs. A large part of the discussion herein is directed to the constitutionality of the railroad commission act, and the contention that the order sought to be enjoined directly and materially affects interstate commerce. Both of these questions were considered and decided by this court in the Campbell Case (O. R. N. v. Campbell, 173 Fed. 957). The opinion of Judge Wolverton in that case contains such an exhaustive, satisfactory, and full discussion of the subject as to leave nothing to be added. I fully concur in his views and am unable to distinguish this case in principle from the one decided by him. The averments in the bill that the order of the commission interferes with interstate commerce is but the conclusion of the pleader and is not in harmony with the facts alleged. Morrow, Circuit Judge, says:

"A rate fixed by a state railroad commission for intrastate traffic, if just and reasonable in and of itself, cannot be held to be unlawful and discriminatory because it may conflict with some rate fixed by the railroad company for interstate traffic. Upon adjustment the latter rate must yield." Woodside v. Tonopah & G. R. Co. (C. C.) 184 Fed. 360.

The next point is disposed of by this court and the state Supreme Court in Ex parte Koehler, Receiver (C. C.) 23 Fed. 529, and State v. S. P., 23 Or. 424, 31 Pac. 960.

The remaining points may be considered together. Rate making is a legislative function, and, when rates are fixed by the Legislature or a subordinate body to which the power has been duly delegated, they will not be declared invalid by the federal courts unless they are so unreasonably low that their enforcement would amount to the taking of property for public use without compensation and therefore practically a confiscation thereof. Willcox v. Cons. Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382. When it is shown that the prescribed rates will prevent the carrier from earning such compensation as under the circumstances is just, both to it and the public, their enforcement will be enjoined. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819. But the rates now in controversy were made by the state commission in the light of the knowledge of the facts, and after a thorough investigation and a hearing of the party interested. They are made by law prima facie lawful, and are therefore presumed

to be reasonable, fair, and just. A. C. L. R. R. v. Fla. ex rel. Ellis, 203 U. S. 256, 27 Sup. Ct. 108, 51 L. Ed. 174; Inter. Com. v. C., R. I. & P. R. R., 218 U. S. 88, 30 Sup. Ct. 651, 54 L. Ed. 946; Ill. Cen. v. Inter. Com. Com., 206 U. S. 441, 27 Sup. Ct. 700, 51 L. Ed. 1128.

The burden is on the complainant to show by clear and satisfactory allegation and proof that, if enforced, they will necessarily be confiscatory. This court has no authority to fix rates, nor should it attempt to usurp the powers of the commission upon its conception as to whether such powers have been wisely exercised or not. It can review the findings of the commission only so far as to determine whether or not the rates promulgated by it will deprive the carrier of its property without just compensation. T. & P. R. R. v. Interstate Com., 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932; San Diego L. & T. Co. v. Natl. City, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154; Knoxville v. K. Wtr. Co., 212 U. S. 1, 29 Sup. Ct. 148, 53 L. Ed. 371; San Diego L. & T. Co. v. Jasper, 189 U. S. 439, 23 Sup. Ct. 571, 47 L. Ed. 892; Interstate Com. Com. v. Ill. Cen., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280; B. & O. v. U. S., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292.

Nor do I think its power, in this regard, is in any respect enlarged by the provisions of the state law for a review by the state courts of the acts of the commission. Whether rates prescribed by legislative authority to be charged by public service corporations are unreasonably low, within the doctrine stated, involves a determination of the value of the property of the complainant devoted to the particular public use to which the rates apply, the measure of a reasonable return thereon, and whether the rates allowed to be charged are sufficient to that end. These questions are complex, intricate, and often difficult of ascertainment, especially in the case of a carrier doing both local and interstate business. There is difficulty, in the first place, in determining the value of the property as a whole, whether it is to be taken as the market value of the stock and bonds, the original cost of construction with expenses of permanent improvements added, the cost of reproduction, the value of the property as a going concern, or whether all these matters are to be considered in fixing a fair value in a given case, and, after the entire value of the properties has been determined, how it shall be divided among the several states through which the road passes. It is substantially agreed that where a railroad is used in both local and interstate business, and the value of the property devoted to public use within a given state is ascertained, that it is fair to apportion such value among the different kinds and classes of business upon a revenue basis, but it is not always easy to ascertain the revenue from interstate traffic. The records of a company commonly show the gross revenue from local traffic wholly within the state, but much of the interstate business is often carried through the state, and in other instances the local haul within the state is only a small proportion of the entire haul, and it is therefore difficult to determine what should properly and rightfully be allowed for interstate traffic.

But even greater difficulty lies in the apportionment of the cost of the service, between local and interstate business, so as to determine whether the revenues from a particular class are sufficient to afford a fair return upon the value of the property devoted to such class. There are many items of cost that disclose the class of business on account of which they are incurred, and can therefore be properly placed; but there is a large percentage of cost of doing all the business, like the maintenance of ways and structures, equipment, superintendence, operation of trains carrying both local and interstate traffic, which are incurred for the common benefit of both, and there is no definite rule by which these items of common cost can be divided between the different classes with mathematical accuracy. M., K. & T. R. R. v. Love (C. C.) 177 Fed. 493.

[1] These matters are not referred to because particularly material in the case in hand, nor with a design to approve or disapprove any particular rule or doctrine in reference thereto, but only to emphasize the position that a complainant seeking to enjoin rates fixed by lawful authority should state facts and not conclusions, facts which, if true, show that such rates will not or do not afford a fair return upon the value of the complainant's property devoted to the particular use. In the absence of such allegations, the presumption of law that the rates as made are fair, just, and reasonable must prevail, and in my judgment the bill does not state facts sufficient to overcome this presumption.

[2] It is alleged in general terms that the local rates of the complainant company affected by the order of the commission were reasonable and just and as low as the situation of the properties and the competitive condition of the business, both intrastate and interstate, "will permit or allow, and the said compensation charged upon said existing tariffs is reasonable and just and affords to your orators but slight compensation above the cost of the service"; that the decreases attempted to be made by the commission involve the class rates referred to and, if enforced, will deprive the complainant of a large sum of annual revenue and compel it to give the use of its property without reasonable or just compensation, and will compel it to increase other rates upon traffic not affected by the order, and particularly upon products of the soil, forest, and farm, many of which receive and enjoy terminal rates, including such commodities to be sold and consumed in the markets of the world, thereby compelling the complainant to discriminate against such last-named products, to the great injury of the complainant and of the public; that the order of the commission is unreasonable, unjust and arbitrary and, if enforced, will deprive the complainant of earnings which it is entitled to collect and receive, in excess of the revenue that would be derived from the enforcement of the order; and "that said pretended order is void and of no force and effect, in this, that the rates sought to be prescribed by said order, in lieu of existing rates, are confiscatory of the property of your orators, and will deprive your orators of their property without compensation and without due process of law." These averments are not sufficient to raise an issue. Central of Ga. R. R. v.

McLendon (C. C.) 157 Fed. 961. They are but conclusions of law and are not supported by any averment of fact. Indeed, they are inconsistent with the facts alleged. The bill states that the receipts from all sources, local and interstate, for the year 1909, were $7,104,081, and the gross expenditures during the year $5,839,698, leaving a net balance for the year of $1,264,383. The value of the property, based upon the capital stock, bonded, and floating indebtedness is put in the complaint at $39,052,008. The bill is silent as to whether interest on the bonded and other indebtedness is included in the aggregate expenditures; but, since no segregation is made by complainant, it is fair to assume that they include the operating expenses, interest, and fixed charges, thus leaving a net balance of $1,264,383, to be applied as dividends on complainant's stock of the par value of $19,000,000. On this showing, it certainly cannot be consistently said that the earnings of the complainant, even after making the deductions alleged to be caused by the order complained of, "will afford but slight compensation above the cost of service," or that the order of the commission is confiscatory, or, in advance of actual experience, that the rates fixed by the commission will not afford a fair return upon the value of the property.

Again, the complainant does not state the amount of intrastate traffic which will be affected by the order, nor the cost of service, nor the value of the property devoted to such business. It sets out the value of the entire property, the gross receipts and disbursements for both state and interstate business for a number of years prior to the date of the order, the amounts received from state and interstate business, freight and passenger, during the year 1909, and approximate percentage of tonnage affected by the order sought to be enjoined, assuming, as I take it, that both local and interstate traffic are affected by such order. There is no allegation as to the cost of conducting state business as distinguished from interstate business; and no statement of the difference between passenger and freight expenses.

The demurrer should be sustained, and it is so ordered.