THE STATE OF FLORIDA, ex rel., RAILROAD COMMISSIONERS, Relators, v. FLORIDA EAST COAST RAILWAY COMPANY, Respondent.

## Opinion Filed April 20, 1915.

1. Where a railroad company has had ample opportunity to be heard on amendments to a rule, it cannot justly complain that the notice given of the hearing did not strictly comply with the statute.

2. In conferring upon the Railroad Commissioners authority to make reasonable and just rates to be charged by railroad common carriers for intra-state transportation, instead of merely conferring upon the commissioners' authority to supervise and regulate such rates as may initially be fixed by the carrier, the Legislature does not invade the constitutional right of "acquiring, possessing and protecting property," nor deprive any one of "property without due process of law."

3. In making rates the commissioners do not assume the management and control of the property or business of the common carrier, but by making lawful rates they supervise and regulate the rendering of the public service "for the correction of abuses and to prevent unjust discrimination and excessive charges" as contemplated by the State Constitution.

4. Where under the statute a rule duly promulgated by the Railroad Commission is prima facie reasonable and just, the burden is upon the carrier to clearly show by convincing evidence that the rule is invalid as applied to it.

5. Rule 19 of the Railroad Commission Rules is a general regulation fixing the relation and apportionment of existing rates for intra-state freight transportation over two or more distinct railroads. The general application of such rule to the respondent's intra-state business is not shown to unlawfully invade the respondent's property rights. If the application

of the rule proves unlawful in whole or in part, a remedy by appropriate procedure exists. It is not shown that such rule will result in unlawful discriminations with reference to or as affected by Federal regulations of interstate commerce.

This is a case of Original Jurisdiction in Mandamus.

Peremptory writ awarded.

*F. M. Hudson,* for Relators;

*Alex St. Clair-Abrams,* for Respondent.

WHITFIELD, J.—Mandamus proceedings were instituted here to enforce observance by the respondent of the following rule of the Railroad Commissioners: "19. On intra-State shipments of freight, not governed by Rule 1, which shall pass over the whole or portions of two or more roads not under the same control, the maximum rate charged shall be, in the case of shipments so passing over two such roads, not greater than the sum of the local rates on such freights, less ten per cent., for the distance hauled over each road, and, in the case of shipments so passing over three or more such roads, not greater than the sum of the local rates on such freights, less twenty per cent., for the distance hauled over each road. The total rate thus ascertained on such freights from the point of shipment to the point of destination shall be divided in such proportion between the railroads over which such freights pass as to give to each railroad interested in the shipment its local rate, less ten per cent., in the case of shipments over two roads, and less twenty per cent. in the case of shipments over three or more roads, for the distance such shipment is hauled, conditioned upon the initial line delivering the traffic to the delivering line at its nearest junctional point.

31—Vol. 69.

Nothing in this rule shall be construed to prevent the total of any joint rate made under this rule from being divided in such proportion between the roads interested in the same as they may agree upon, but a failure to so agree between the roads interested shall in no way affect the total joint rate to be charged and collected, on or work delay in the transportation of, such freight, or be a subject of appeal to the Commission by the roads at interest."

The return of the respondent in effect avers that the rule operates to discriminate against shippers located on its line, in that shipments from other lines would have a lower rate *over respondent's line* than shipments from and to points on respondent's line would have; that the enforcement of the rule would be unjust, unreasonable and oppressive in that it would greatly reduce the entire receipts of the carrier below the already unremunerative point, particulars being given; that the present rates are reasonable and just to the shippers, but do not in fact afford a reasonable compensation for the services rendered, and the enforcement of the rule against respondent will deprive it of just compensation for the services rendered, and violate its property rights under the organic law. A demurrer to the return was overruled. State *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 65 Fla. 424, 62 South. Rep. 591.

Issue having been joined on the answer to the alternative writ, and the rule being by statute deemed to be *prima facie* reasonable and just, the burden is upon the respondent to sustain by clear and convincing evidence its averments of fact to show that the application of rule 19 to the business of the respondent will cause unjust discrimination, and will violate property rights protected by the

State and Federal Constitutions.  See State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175.

A proffered amendment of the answer or return to the alternative writ sets up that though notice was given as preliminary to an amendment of Rule 19 relating to joint rates, in particulars that are material here, such notice was not in compliance with the mandatory requirements of the statute.  The asserted defect in the notice given is that it did not state the division of the joint rate.

The statute provides that "Before applying joint rates to roads not under joint management and control, the Commissioners shall give thirty days' notice to the owners, operators or lessees of said road, of the joint rate contemplated, and of its divisions of the same, and giving hearings to roads desiring to object to said rates."

The alternative writ alleges that on June 10, 1912, the "railroad commissioners gave due and lawful notice in writing to all railroads and railroad companies doing intra-State business in the State of Florida, that they would on the 17th day of July, 1912, take under consideration the matter of certain proposed amendments to the said Rule 19"; that on July 17th, 1912, at the hearing in Tallahassee, "upon motion of the Florida East Coast Railway Company and other carriers represented at said hearing, it was ordered that the time for considering and acting upon this matter be extended for thirty days, so as to enable the said Florida East Coast Railroad Company and the other carriers who might so elect to prepare and file such further statistical information as they might deem necessary to properly sustain their several defenses."

The return of the respondent "admits that there was a

hearing on said proposed amendment to said Rule 19 at Tallahassee, Florida, on the 17th day of July, 1912, as set forth in the    *    alternative writ," and "says that it did not put said Rule 19 in force because this respondent says that said Rule, as amended, was unjust, unreasonable and beyond the powers of the Railroad Commissioners of Florida to make for the    *    reasons" that in its operation the rule would compel discriminations and violate property rights secured by the State and Federal Constitutions.

The following provision appears in Rule 19 as originally adopted and also as amended pursuant to the notice referred to: "Nothing in this rule shall be construed to prevent the total of any joint rate made under this rule from being divided in such proportions between the roads interested in the same as they may agree upon, but a failure to so agree between the roads interested shall in no way affect the total joint rate to be charged and collected on or work delay in the transportation of such freight, or be a subject of appeal to the Commission by the roads at interest."

As the amendment considered and adopted pursuant to the notice given makes no change in the rule as to divisions of the joint rates covered by the rule, and as the respondent had ample opportunity to be heard on the amendments to the Rule that were proposed and adopted after full hearing, it cannot now complain that the notice given to it did not state the divisions of the joint rate, merely because the statute requires that feature to be contained in the notice given of a contemplated exercise of the express power "to make reasonable and just joint rates."

The Constitution of Florida ordains that "The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature." Sec. 30, Art. XVI, Const.

In conferring upon the Railroad Commissioners authority to make reasonable and just rates to be charged by railroad common carriers for intra-State transportation, instead of merely conferring upon the commissioners authority to supervise and regulate such rates as may initially be fixed by the carrier, the Legislature does not invade the constitutional right of "acquiring possessing and protecting property," nor deprive any one of "property without due process of law." The burden of lawful regulation is assumed by the carrier in engaging in the public service of a common carrier. State *ex rel.*, Railroad Com'rs v. Florida East Coast R. Co., 57 Fla. 522, 49 South. Rep. 43.

A common carrier corporation devotes its property to the public service subject to charter and franchise conditions and requirements and to the obligations growing out of the nature of the business undertaken, including the duty to observe lawful governmental regulations designed to correct and prevent abuses, unjust discriminations and excessive charges, and to secure safety, convenience and fairness to the public to be served. Governmental power to regulate public service does not include the absolute control of property that is incident to ownership. The right and duty of the State to supervise and regulate intra-State common carrier service in the interest of the public, do not authorize an invasion of the domain of

Federal authority or arbitrary action that unlawfully impairs contract rights or violates the property rights or supersedes the privileges of ownership of those whose property is used in rendering the public service. Georgia Railroad & Banking Co. v. Smith, 128 U. S. 174, text 179, 9 Sup. Ct. Rep. 47.

In making rates the commissioners do not assume the management and control of the property or business of the common carrier, but by making lawful rates they supervise and regulate the rendering of the public service "for the correction of abuses and to prevent unjust discrimination and excessive charges" as contemplated by the State Constitution. The statute expressly requires that the rates made by the commissioners shall be *reasonable and just;* and if the carriers were permitted to initiate rates they would likewise have to be reasonable and just, therefore, as only reasonable and just rates may be lawfully prescribed or lawfully charged, even if not prescribed, the carrier cannot justly complain because the rates are initially made by a governmental agency, since no more than just and reasonable rates are lawful under any circumstances, the burden of lawful regulation is assumed by engaging in the public service, and the rates fixed by the governmental agency are subject to judicial review in so far as they affect rights secured by law. See Louisville & N. R. Co., v. Garrett, 231 U. S. 298, — Sup. Ct. Rep. —.

The testimony in the case taken by consent is filed for the consideration of the court under the issues made by the pleadings. On the pleadings and under the statute making the rule *prima facie* reasonable and just, the burden is upon the respondent carrier to clearly show by

convincing evidence that the application of Rule 19 to its intra-State freight transportation business would result in unlawful discrimination of which the carrier may complain, or would deprive the respondent of substantial property rights in violation of organic law. At the outset it may be stated that there is no satisfactory showing that any unjust or unlawful discrimination of which the carrier may complain, will inevitably result from the enforcement of the rule against the respondent. See Interstate Commerce Comm. v. Chicago, R. I. & P. R. Co. and Burnham, Hanna, Munger Dry Goods Co. v. Chicago, R. I. & P. R. Co., 218 U. S. 88, text 109, 30 Sup. Ct. Rep. 651.

Should the practical operation of the rule cause unlawful discrimination as to localities, or as to commodities. or otherwise, the law affords adequate remedies to those injured thereby. It may be that the absolute and uniform terms of the rule will, because of peculiar conditions, result in unlawful or unjust discriminations in some practical applications, and such instances may be few or many; but the Railroad Commissioners or the courts may remedy any unlawful operation of the rule where substantial rights are thereby injured. The constitution expressly provides that unjust discrimination shall be prevented and abuses corrected in the rendering of service of a public nature in this State. When duly and fairly tested by experiment and experience, the defects in the rule, if any, may be remedied in due course of law at the instance of any one having rights in the premises.

Rule 19 is a general regulation fixing the relation and apportionment of existing rates for intra-State freight transportation over two or more distinct railroads. Its purpose is to give shippers as near as may be the benefit

488    SUPREME COURT OF FLORIDA.

State, ex rel., Railroad Com. v. F. E. C. Ry. Co.—Opinion of Court.

of · similar rates for intra-State freight transportation bewteen points in the State that are approximately or practically the same distance apart whether such points are on the same or on different lines of railroad. Every entire transportation requires a haul from point or origin to point of destination with a terminal service at each end. While a transportation of freight by two or more connecting carriers between the termini requires a transfer to each conncting carrier, it requires only two terminal services, one by the initial carrier, and one by the final carrier.

As the terminal service at each end of a complete trans-portation is ordinarily a substantial element in the cost of the receipt, transportation and delivery of freight, the elimination of one terminal service by each carrier and the substitution of a mere transfer service at the connecting point, should ordinarily reduce the cost of transportation to each carrier, thereby enobling the entire joint transportation service to be performed for at least some appreciable amount less than two separate transportations with four terminal services would cost. If a shipment is made to an intermediate point and then re-shipped to destination, · two local transportation charges would be exacted; and as the charge is greater in proportion for a shorter distance than for a longer one, a charge of the local rate for each of the separate hauls between the termini would most probably be greater than for a single haul for the entire distance. While a long haul between termini may be more profitable to one carrier even with a lesser rate in proportion to the greater distance, yet a carrier may not reach both points, and in order to give approximately similar rates between points on two different lines of railroad as are given between points that

are both on one railroad, but practically the same distance apart, each carrier should, in view of the substitution of a mere transfer service for one terminal service, and for the general purpose of equalizing rates between points in the State, the same distance apart, yield something from its local rate, so that the entire charge will be approximately the same for the same distance in the State, whether the point of origin and the point of destination are on the same line of railroad or not. See S. A. L. Ry. v. State ex rel. Ellis, 203 U. S. 261, 27 Sup. Ct. Rep. 109. It may be that the difference between the cost of a mere transfer to or from connecting carrier and the cost of one terminal service is not so great as the reduction from local rates required by the rule; but in order to attain a degree of equality in rates to the different sections of the State, each carrier should make a reasonable reduction in its local rate for a portion of a continuous freight transportation that requires not more than one terminal service on its line. If the uniform reduction of rates required by the rule is unjust and unlawful as an entirety, the carrier has the means of demonstrating it; and when such demonstration is made, appropriate relief is a matter of right. Railroad Com'rs v. St. L. I. M. & S. R. Co., 230 U. S. 553, 33 Sup. Ct. Rep. 1030. But no such demonstration appears in this case. A. C. L. R. Co. v State *ex rel.* Ellis, 203 U. S. 256, 27 Sup. Ct. Rep. 108. If the rule operates unjustly in particular instances owing to peculiar circumstances, there is a remedy afforded by due course at law. It does not appear that because of Rule 19 a joint rate for a given distance over two lines will be less than a single rate for a like distance over one line. Each carrier has a higher mileage rate for its share of the joint haul, than it would have for one haul the entire distance.

The burden of the respondent's contention is not that the reduction prescribed by Rule 19 is too great, but that no reduction at all should be required of it, upon the theory that under the peculiar circumstances affecting its business, any reduction of rates whatever put upon the respondent by the rule is illegal because it would unlawfully invade its property rights. The circumstances affecting the respondent's business may be peculiar and entitled to consideration appropriate thereto. Florida East Coast Ry. Co. v. United States, 234 U. S. 167, — Sup. Ct. Rep. —. But in view of the purpose of the rule and the duty of the respondent to aid in equalizing rates, it would require a clear and definite showing that the order would inevitably invade respondent's property rights in violation of the constitution, before the courts will relieve it entirely of the duty to observe the rule which by statute is deemed to be *prima facie* reasonable and just. No such clear and specific showing has been made in this case. This being the definite conclusion reached, it is not necessary to discuss the character or the probative force and legal effect of the evidence produced in support of the averments of the answer to the effect that an enforcement of the rule will so deplete respondent's earnings as to unlawfully invade its property rights.

The evidence does not show the costs of the respondent's entire intra-State traffic to which the rule applies, or the receipts from such traffic, or the cost of and receipts from its entire intra-State business, or the proper apportionment of and the fair value of the property used in rendering its intra-State service. See Northern Pacific Ry. Co. v. North Dakota, 236 U. S. 585, decided March 8, 1915. See also Simpson v. Shepard, Minnesota Rate cases, 230 U. S. 352, 33 Sup. Ct. Rep. 729; Atlantic Coast Line R.

Co. v. State of Florida *ex rel.,* Ellis, 203 U. S. 256, 27 Sup. Ct. Rep. 108.

A common carrier rate regulations are required to be reasonable with reference to the entire traffic affected by the rates, the carrier being entitled to a fair compensation for services rendered and the public having a right to reasonably adequate service without unjust discriminations or excessive charges. General uniformity of existing rates between localities in the State being the purpose of Rule 19, if the attainment of such uniformity discloses unreasonableness in the respondent's rates, the remedy by appropriate procedure exists. See Northern Pac. R. Co. v. State of North Dakota *ex rel.* Attorney General, 216 U. S. 579, 30 Sup. Ct. Rep. 423. There is nothing in the evidence to indicate that the operation of Rule 19 will result in unlawful discriminations in localities or otherwise with reference to or as affected by regulations of inter-State commerce.

A peremptory writ will be awarded.

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND ELLIS, JJ., concur.