### SAN JOAQUIN & KING'S RIVER CANAL & IRRIGATION CO. v. STANISLAUS COUNTY et al.

(Circuit Court, N. D. California.   May 25, 1898.)

**1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—NECESSITY OF DIVERS CITIZENSHIP.**

Where it affirmatively appears from the allegations of a bill that a federal question is directly involved, it is not essential to the jurisdiction of a federal court that diversity of citizenship between the parties should also appear.

**2. SAME—DUE PROCESS OF LAW—STATE REGULATION OF CHARGES BY IRRIGATION COMPANY.**

The action of a board of supervisors of a county of California, under the statute of the state, in fixing rates to be charged by an irrigation company for water furnished to consumers so low that they will not admit of the company earning such compensation as, under the circumstances, is just to it and to consumers, deprives the company of its property without due process of law, and of the equal protection of the laws, and a circuit court of the United States has jurisdiction of a suit to restrain the enforcement of such rates, where the allegations of the bill, if true, show that their enforcement will render it impossible for the complainant to earn a fair dividend upon the value of its property actually used in and useful to the appropriation and furnishing of such water.

Bill in equity to enjoin the defendants from enforcing, or attempting to enforce, a certain order of the board of supervisors of Stanislaus county fixing the rates which the complainant should charge for water distributed by it, and to declare said order null and void.   Demurrer for want of jurisdiction and of equity.   Demurrer overruled.

Garret W. McEnerney, for complainant.

C. A. Stonesifer and L. W. Fulkerth, for respondents.

MORROW, Circuit Judge.   This is a bill in equity to enjoin the defendants from enforcing, or attempting to enforce, a certain order of the board of supervisors of Stanislaus county fixing the rates which the

complainant should charge for water distributed by it, and to declare said order null and void.    A demurrer is interposed on the grounds of want of jurisdiction and want of equity.

The bill charges, substantially, that the complainant, the San Joaquin & King's River Canal & Irrigation Company, is a corporation organized and existing under the laws of the state of California, and is a citizen and resident of said state; that it became an incorporation in the month of September, 1871, and was incorporated under the act of the legislature of the state of California entitled "An act to provide for the formation of corporations for certain purposes," approved April 14, 1853 (St. 1853, p. 87), as amended by an act of the legislature of the state of California entitled "An act to authorize the incorporation of canal companies and the construction of canals," approved May 14, 1862 (St. 1862. p. 540); that the defendant the county of Stanislaus is one of the political subdivisions of the state of California, and within the Northern district of California; that the board of supervisors of the said county of Stanislaus is the governing or legislative body of said county; that the defendants George W. Toombs, Charles H. Osler, James Alfred Davis, Thomas J. Carmichael, and Joseph P. Barnes were at all of the times stated and now are the duly-elected, qualified, and acting members of said board; that said defendants are citizens and residents of the state of California and of the Northern district of California; that the complainant, for more than 10 years last past, has been engaged, and is still engaged, in the business of appropriating water for irrigation, sale, rental, and distribution for hire, and does now and for more than 10 years last past has maintained a canal through the counties of Fresno, Merced, and Stanislaus, in the state of California, in which it carries its waters, so that the same may be sold and distributed to the takers or consumers thereof; that the complainant did, on the 1st day of January, 1896, ever since has, and does now, own and use, in the appropriation and furnishing of such water to its customers, and the consumers and users thereof, in the three counties aforesaid, canals, ditches, flumes, water chutes, and other property, which are actually used in and useful to the appropriation and furnishing of such water (excluding the right to appropriate the same), which property at all of said times was, and still is, of the reasonable worth and value of $1,000,000; that the right of appropriation above alleged, of which the complainant is the owner, and which it acquired more than 20 years ago, and has ever since held and owned, is necessary to enable it to supply waters to its customers, and the consumers thereof, through the three counties aforesaid, and without said right of appropriation, and the waters obtained thereunder, the complainant would be unable to furnish said water to its customers, and the consumers thereof, and there is no other supply obtainable wherewith to supply such needs; that said right of appropriation was at all of the times herein mentioned, and now is, of the reasonable worth and of the fair value of $500,000.    Then follow averments of the rates charged by the complainant on the 1st day of January, 1896, and until the adoption of the order which it is sought to have enjoined; also of its total gross receipts for the period of nine years from 1887, to and including 1895, and of its expenses for the same period of time.    In this connection, it is further alleged that

the average gross receipts of the complainant during said nine years were $54,734.15 per annum, and the average cost of maintenance of the complainant during said period was $22,045.16; that the net returns during said nine years upon the value of the property actually and necessarily used and useful to the appropriation and furnishing of such water by the complainants to its customers and the users thereof generally, together with the right to appropriate said water, amounted to a fraction over 2 per cent. per annum, and never reached 3½ per cent. per annum, and never amounted to 5 per cent. per annum, upon the value of the canals, ditches, flumes, water chutes, and all other property actually used and useful to the appropriation and furnishing of such water, exclusive of the value of the right of appropriation; that the operations of the complainant in the conduct and carrying on of its business have at all times been characterized by the strictest economy and prudence, and the expenses of the maintenance of its property and the cost of its operation have been the lowest figures at which such maintenance could be secured and such operation carried on; that the rates charged by the complainant, as alleged, as the prices required by it for the sale, rental, and distribution of its water to its customers, and to the users thereof, generally, were and are fair and reasonable; that in pursuance of a petition filed in the office of the board of supervisors of the county of Stanislaus, state of California, under an act of the legislature of the state of California approved March 12, 1885 (St. 1885, p. 95), entitled "An act to regulate and control the sale, rental and distribution of appropriated waters in this state, other than in any city, city and county or town therein, and to secure the rights of way for the conveyance of such water to the places of use," by which petition, signed by 25 persons claiming to be inhabitants and taxpayers of the said county of Stanislaus, said board of supervisors were petitioned to regulate and control the rates of compensation to be collected by the complainant for the sale, rental, and distribution of the waters of the complainant to the inhabitants of the said county of Stanislaus, said board of supervisors, on June 24, 1896, and the individual defendants as members of and composing said board, proceeded to and did, in pretended compliance with said act of the legislature aforesaid, fix certain rates to be thereafter charged by the complainant to the users of water in the county of Stanislaus. Then follow averments in which the rates charged are set forth, which, as appears from said bill, are lower than the rates charged by the complainant at the time said order was made. It is further alleged in the bill that, in and by its order fixing said rates, the said board of supervisors did estimate and fix, as the annual reasonable expenses, including the costs of repairs, management, and the operation of its works by the complainant, the sum of $22,000 per annum, the annual and reasonable cost whereof was, is, and will for a long time hereafter continue to be, that sum or more; that the rates as fixed by the defendants are grossly unfair and unreasonable, and, if applied to its whole business, will not yield or net to the complainant more than $40,000 gross per annum, or more than $1^4/_5$ per cent. upon the value of the canals, ditches, flumes, water chutes, and all other property actually used and useful to the appropriation and furnishing of such water, exclusive of the value of the right to the appropriation

thereof, and will not yield or net to the complainant $1^1/_5$ per cent. per annum on the value of the canals, ditches, flumes, water chutes, and all other property actually used in and useful to the appropriation and furnishing of such water, together with the value of the right to appropriate such water; that, in fixing said rates as aforesaid, the defendants willfully, and in violation of the rights of the complainant, fixed and estimated the value of its ditches, flumes, water chutes, and other property actually used in and useful to the appropriation of the appropriated waters of the complainant, at the sum of $337,000; that, in making said estimate, the defendants totally excluded and refused to consider, as one of the items of its property, its right of appropriation, without which it would be impossible to carry on its said business of selling, renting, and distributing such appropriated waters, and did make said estimate well knowing that the value of the property of the complainant, other than the value of its right to appropriate said waters, was far in excess of the sum of $750,000, and did, without receiving any evidence of the value of said property, and without having any testimony as to what its value was, arbitrarily fix and declare it to be the sum of $337,-000, when in truth and in fact it was fully and reasonably worth three times that sum, as said individual defendants then and there well knew; that the defendants aver, and claim the fact to be, that, under the terms of the aforesaid act of the legislature referred to, they were not in duty bound, or bound at all, to consider, in fixing the rates to be charged by the complainant, the value of its right to appropriate the waters necessary and required by it to carry on its business of distributing water; that there is no reason to believe that the value of complainant's business will or can be increased by reason of the reduced rates fixed and established by the defendants, but complainant, upon information and belief, avers that if such threatened reduction should be made in its rates by the defendants, the same will necessarily result in a depreciation of its net receipts, so that the same will not ever amount to or exceed 3 per cent. per annum upon the value of its property used and necessarily employed in the appropriation, sale, rental, and distribution of its waters in the manner hereinbefore alleged; that the act of the legislature, under which it is claimed and pretended that said rates have been fixed and established, is in violation of, and repugnant to, the provisions of section 1 of the fourteenth amendment to the constitution of the United States, in this: that, by the provisions of said act, it is declared that the rates authorized to be fixed and established thereunder shall be fixed and established without reference to the value of the right of any person, corporation, or association to receive compensation for, or a return upon, the value of any right by it held or owned to appropriate any waters of this state for sale, rental, and distribution to the inhabitants thereof; that, under the rates as fixed by the defendants, the complainant will not receive a return greater than 2 per cent. per annum upon the value of its property, which is grossly unfair and unreasonable; that, in fixing said rates so that the same do not afford nor secure to the complainant a fair, just, reasonable, or equitable return upon the value of its property devoted to the said public use, the defendants have sought to and will effect a deprivation of the property of the complainant without due process of law, and will be a denial to it of the equal

protection of the law, under section 1 of article 14 of the amendments to the constitution of the United States. The bill then prays for an injunction; that the said order be declared null and void; and that it be adjudged and decreed that the complainant is entitled to have the rates for supplying its waters to its customers, and to the users thereof generally, so fixed that they will, in the aggregate, afford a reasonable and just compensation for the services rendered, and a fair, just, and equitable return therefor.

In support of the objection raised by the demurrer to the jurisdiction of this court, it is urged that it appears, from the allegations of the bill, that the complainant and the defendants are citizens of this state, and that this is fatal to the jurisdiction of the circuit court. But this fact does not deprive the circuit court of jurisdiction, if it appear, from the allegations of the bill, that a federal question is involved. The same objection was made in the case of City Ry. Co. v. Citizens' St. Ry. Co., 166 U. S. 557, 17 Sup. Ct. 653. Mr. Justice Brown, delivering the opinion of the court in that case, said, in overruling this objection to the jurisdiction of the circuit court:

"There can be no doubt that the circuit court had jurisdiction of the case, notwithstanding the fact that both parties are corporations and citizens of the state of Indiana. It should be borne in mind in this connection that jurisdiction depended upon the allegations of the bill, and not upon the facts as they subsequently turned out to be. * * * All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair."

It is immaterial, therefore, that there is an absence of diversity of citizenship, so long as the alleged cause of action arises under the constitution, laws, or treaties of the United States, and a federal question or controversy is presented. Diversity of citizenship and a federal question are two separate and distinct sources of federal jurisdiction, and, while it happens that both may exist in the same case, still it is not necessary that both should concur to give the circuit court jurisdiction. If either exist, and the necessary jurisdictional amount is involved, jurisdiction attaches. Act Aug. 13, 1888 (25 Stat. 433). In Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, both grounds of jurisdiction, viz. diversity of citizenship and a federal question, existed. In City Ry. Co. v. Citizens' St. Ry. Co., supra, there was not any diversity of citizenship, but a federal question was presented. It is therefore clear that the jurisdiction of this court must be determined by the existence or nonexistence of a federal question in the case as made by the bill. In other words, as the jurisdiction of the circuit court of the United States is limited, in the sense that it has no other jurisdiction than that conferred by the constitution and laws of the United States, it must affirmatively appear, from the allegations of the bill itself, that a federal question is directly involved. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173; Mining Co. v. Turck, 150 U. S. 138, 14 Sup. Ct. 35; Hanford v. Davies, 163 U. S. 273, 279, 16 Sup. Ct. 1051; Publishing Co. v. Monroe, 164 U. S. 105, 110, 17 Sup. Ct. 40; Railroad Co. v. Steele, 167 U. S. 659, 662, 17 Sup. Ct. 925; Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 29 C. C. A. 462, 85 Fed. 867.

What, then, is this federal question, as presented by the averments of the bill in this suit? It is alleged, in substance, that if the order fixing the rates for the distribution of water adopted by the board of supervisors of Stanislaus county be not enjoined, and declared null and void, the complainant will, by reason of the alleged low rates prescribed and fixed in the said order, be practically deprived of its property without due process of law, and that it will be denied the equal protection of the laws vouchsafed by the fourteenth amendment to the constitution of the United States. That the complainant is a quasi public corporation is well settled. Irrigation Dist. v. Bradley, supra; San Diego Land & Town Co. v. City of National City, 74 Fed. 79; Fudickar v. Irrigation Dist., 109 Cal. 29, 41 Pac. 1024; Spring Val. Waterworks v. Board of Sup'rs of San Francisco, 61 Cal. 3; Price v. Irrigating Co., 56 Cal. 431; Ditch Co. v. Zellerbach, 37 Cal. 577; Civ. Code Cal. § 1410 et seq.; Act March 12, 1885 (St. Cal. 1885, p. 95). As a quasi public corporation, the complainant is undoubtedly subject to reasonable regulations as to the rates it should charge for the distribution of water. It must be held to have accepted its franchise, rights, and privileges subject to the condition that the government creating it, or the government within whose limits it conducts its business, may, by legislation, protect the people against unreasonable charges for the services rendered by it. But, on the other hand, it is not subject to such unreasonable regulations as would deprive it from earning a reasonable profit on its investment; thereby amounting, substantially, to a taking of property without due process of law, and denying to it the equal protection of the laws. Smyth v. Ames, 18 Sup. Ct. 418, and cases there cited.

In Railway Co. v. Gill, 156 U. S. 649, 657, 15 Sup. Ct. 487, it was said that "there is a remedy in the courts for relief against legislation establishing a tariff of rates which is so unreasonable as to practically destroy the value of property of companies engaged in the carrying business, and that especially may the courts of the United States treat such a question as a judicial one, and hold such acts of legislation to be in conflict with the constitution of the United States, as depriving the companies of their property without due process of law, and as depriving them of the equal protection of the laws,"—citing Railroad Commission Cases, 116 U. S. 307, 331, 6 Sup. Ct. 334, 348, 349, 388, 391, 1191; Dow v. Beidelman, 125 U. S. 681, 8 Sup. Ct. 1028; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702; Railway Co. v. Wellman, 143 U. S. 339, 12 Sup. Ct. 400; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047.

In Turnpike Road Co. v. Sandford, 164 U. S. 578, 594, 17 Sup. Ct. 204, Mr. Justice Harlan, delivering the opinion of the court, said:

"A statute which, by its necessary operation, compels a turnpike company, when charging only such tolls as are just to the public, to submit to such further reduction of rates as will prevent it from keeping its road in proper repair and from earning any dividends whatever for stockholders, is as obnoxious to the constitution of the United States as would be a similar statute relating to the business of a railroad corporation having authority, under its charter, to collect and receive tolls for passengers and freight."

In Smyth v. Ames, supra, the same learned justice, after making an extensive review of the cases on the subject, thus summarized the law:

"A state enactment, or regulations made under the authority of a state enactment, establishing rates for the transportation of persons or property by railroad that will not admit of the carrier earning such compensation as, under all the circumstances, is just to it and to the public, would deprive such carrier of its property without due process of law, and deny to it the equal protection of the laws, and would, therefore, be repugnant to the fourteenth amendment of the constitution of the United States. While rates for the transportation of persons and property within the limits of a state are primarily for its determination, the question whether they are so unreasonably low as to deprive the carrier of its property without such compensation as the constitution secures, and therefore without due process of law, cannot be so conclusively determined by the legislature of the state, or by regulations adopted under its authority, that the matter may not become the subject of judicial inquiry."

With respect to the merits of the question presented by the bill, it is obvious that the court cannot, at this stage of the proceedings, determine that controversy. Whether or not the complainant can justly complain of the rates fixed by the order of the board of supervisors of Stanislaus county, and whether or not the same are unreasonably low, must depend upon the evidence to be adduced upon the hearing. The court cannot now say to what extent they are unreasonable, if, indeed, they be determined to be unreasonable at all. It is sufficient, for the purposes of the demurrer, that the bill presents a federal question. It therefore follows, from the views stated, that the demurrer should be overruled; and it is so ordered.