WOODSIDE v. TONOPAH & G. R. CO. et al.

SOUTHERN PAC. CO. v. RAILROAD COMMISSION OF NEVADA et al.

(Circuit Court, D. Nevada. February 2, 1911.)

Nos. 1,141, 1,142.

1. INJUNCTION (§ 146*)—GROUNDS FOR DENIAL OF PRELIMINARY INJUNCTION—EFFECT OF ANSWER.

Where the equities of a bill are fully and specifically denied by a sufficient answer under oath, the court usually denies an injunction pendente lite for the reason that such an answer is deemed to overcome the equities of the bill.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 319; Dec. Dig. § 146.*]

2. CARRIERS (§ 13*)—REGULATION OF RATES BY STATE—VALIDITY.

A rate fixed by a state railroad commission for intrastate traffic, if just and reasonable in and of itself, cannot be held to be unlawful and discriminatory because it may conflict with some rate fixed by the railroad company for interstate traffic.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 21-24; Dec. Dig. § 13.*]

3. CARRIERS (§ 18*)—REGULATION OF RATES BY STATE—VALIDITY OF RATES FIXED—SUIT FOR INJUNCTION.

The showing made by complainants in suits on behalf of railroad companies to enjoin the enforcement of rates for the transportation of timber products between certain points in Nevada, fixed by the railroad commission of the state after a hearing, held not sufficient to support the claim that such rates are unjust and unreasonable and would not be remunerative, or to warrant the granting of a preliminary injunction.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 20, 24; Dec. Dig. § 18.*]

In Equity. Suits by George D. Woodside against the Tonopah & Goldfield Railroad Company, the Railroad Commission of Nevada, H. F. Bartine, Henry Thurtell, and J. F. Shaughnessy, as Commissioners thereof, Denver S. Dickerson, as acting Governor of the State of Nevada, and R. C. Stoddard, as Attorney General of the State of Nevada, and by the Southern Pacific Company against the same defendants, excepting the Tonopah & Goldfield Railroad Company, to enjoin the Railroad Commission from enforcing certain railroad rates fixed by the commission for the transportation of forest products between designated points in that state. On motions for preliminary injunction. Motions denied.

―――――――

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

James F. Dennis, for complainant Woodside.

Charles R. Lewers and C. W. Durbrow, for complainant **Southern Pacific** Railroad Company.

Hugh H. Brown, for defendant Tonopah & G. R. Co.

Cleveland H. Baker and H. F. Bartine, for other defendants.

Before MORROW, Circuit Judge, and FARRINGTON and VAN FLEET, District Judges, convened under the provisions of Act June 18, 1910, c. 309, § 17, 36 Stat. 557.

MORROW, Circuit Judge (orally). These two actions are suits in equity brought by the complainants to restrain the railroad commission of Nevada from enforcing joint rates for the transportation of forest products in car load lots from Verdi, in the state of Nevada, to Tonopah and Goldfield, in the same state. The distance from Verdi to Goldfield is approximately 290 miles. For the distance of 190 miles from Verdi to Mina the transportation is over the main line of the Southern Pacific Railroad between Verdi and Hazen and over a branch line between Hazen and Mina. From Mina to Goldfield, a distance of about 100 miles, the transportation is over the Tonopah & Goldfield Railroad.

The present freight rate on forest products from Verdi to Goldfield is 65 cents per hundred pounds in car load lots, or $13 a ton, or the estimated equivalent of $19.50 for the thousand feet of lumber. The railroad commissioners have reduced this rate and prescribed, for lumber and articles taking lumber rates, joint rates from Verdi to Goldfield of 40 cents to the hundred pounds in car load lots, or $8 a ton, or the estimated equivalent of $12 for the thousand feet of lumber. The railroad commissioners have also made a classification for rough timber, for which they have prescribed a rate of 25 cents per hundred in car load lots, or $5 per ton, the equivalent of $7.50 per thousand feet. The latter rate appears to be the important one in these cases, as it includes mining timbers.

Complainants allege that the rates prescribed by the railroad commission for the transportation of forest products between the designated points are unreasonable and unjust, unremunerative, and confiscatory; that the authority of the railroad commission was to prescribe reasonable rates, rates that would be fair and just and yield a fair and just return; that they have no power to prescribe rates that are not reasonable and just; and that, in prescribing the rates they now propose to enforce, they have exceeded their powers under the law.

The jurisdiction of this court is invoked in both cases, on the ground of diverse citizenship. The complainant, Woodside, in the first-named case, is a citizen of the state of Pennsylvania, and a stockholder of the Tonopah & Goldfield Railroad, and the suit is brought by him against the railroad company, a corporation of the state of Nevada, and the railroad commissioners of Nevada, to prevent the enforcement of these rates.

In the second case, the Southern Pacific Company is a corporation organized under the laws of the state of Kentucky. And the action is likewise against the railroad commissioners of Nevada.

The defendants have answered as they are required to do under the statute, and have fully met and denied all of the equities of the complaints. The answers are specific and under oath. In equity practice this is usually deemed sufficient to dissolve a restraining order and prevent the issuance of an injunction pendente lite; that is to say, where the equities of the bill are denied fully and explicitly by a sufficient answer under oath, the court usually denies an injunction pendente ·lite for the reason that such an answer is deemed to overcome the equities of the bill.

We may, however, refer to some features of the controversy as shown by the bill and answer and supporting affidavits: The allegations of the bill of complaint are very general in their character. They charge the railroad commission with having, as I said before, exceeded their powers in unlawfully prescribing rates that are unreasonably and unjustly low and unremunerative and confiscatory, and, in the Woodside Case, it is charged that these rates will deprive the railroad company of its property without due process of law, in violation of the Constitution of the United States. In the Southern Pacific Case the charge is that the rates prescribed will result in discrimination against points outside of the state, and that the enforcement of these rates will interfere with interstate commerce.

It appears that there is a joint rate for the carrying of forest products from Truckee, Loyalton, and Fulda, in California, to Tonopah and Goldfield, which is the same rate now established by the railroads from Verdi to the same points, namely, 65 cents per hundredweight by the car load lots; and it is charged that, if the rates fixed by the railroad commissioners for the state of Nevada is enforced, it will make an unlawful discrimination with respect to the products transported from Truckee, Loyalton, and Fulda, in California, to Tonopah and Goldfield, in Nevada, as compared with the rates from Verdi, in Nevada, to Tonopah and Goldfield, in Nevada. That is the main feature of the Southern Pacific Case, that it interferes with interstate commerce. Ultimately this charge resolves itself into a constitutional question, whether the order of the railroad commissioners is an interference with the exclusive power of Congress to regulate commerce among the several states. The present rate for transporting forest products from points in California to points in Nevada has been fixed by the railroads and not by the authority of the Interstate Commerce Commission. The order of the railroad commission does not, therefore, interfere with any authority of the federal government to regulate commerce between the several states; that authority not having been expressed or declared. A rate fixed by a state railroad commission for intrastate traffic, if just and reasonable in and of itself, cannot be held to be unlawful and discriminatory because it may conflict with some rate fixed by the railroad company for interstate traffic. Upon adjustment the latter rate must yield. This we think is a complete answer to the allegations of the bill in the Southern Pacific Case.

In the Woodside Case there is an allegation in the complaint to the effect that, if the rates prescribed by the railroad commission had been in effect for the seven months ending July 31, 1910, it would

have resulted in giving the railroad company a revenue of .0369 of a cent per ton per mile in the transportation of these forest products originating at Verdi; and it is said that the cost of all the freight, not the cost of transporting the forest products, but the cost of transporting all the freight over the line of road during that time was $.04065 per ton per mile. That is to say, the transportation would cost a sum in excess of the revenue per ton per mile as fixed by the order of the railroad commission.

The criticism of this allegation of the bill is, of course, primarily, that the cost of transportation is not stated with respect to the specific article transported. It is the cost of all the freight transported that is here alleged. And it is pointed out by the railroad commission that there is a great difference in carrying, transporting, and handling various kinds of freight; and that to say that the cost of transporting all kinds of freight for the amount named would be in excess of the amount received by the railroad company furnishes the court with no specific information as to the cost of transporting forest products. The allegation is, however, positively denied by the railroad commission, and it is denied specifically.

The railroad commission say that, while they admit the receipts of the railroad company on forest products would be as stated in the complaint, they allege that the cost of transportation was not the amount stated in the complaint, but was a very much less amount, and they allege that the cost of handling all freight over the line of the railroad was $.0289 per ton per mile, showing, according to this allegation that the railroad company would have received a remunerative return in transporting these forest products.

To the court this allegation of the answer appears to be reasonable, and within the knowledge of the court obtained in other cases. It is objected, however, that such a determination is by comparison and is inadmissible—still, as a matter of evidence, we know that the transportation of lumber for 290 miles at a rate of $8 per ton for the better class, and $5 for the inferior class, is, as compared to other rates throughout the United States and upon this coast, a high rate. The transportation of lumber, for example, from the Willamette Valley, in Oregon, to San Francisco, over the Siskiyou mountains, a distance of 700 miles, at $3.10 per ton, has been held to be a just and reasonable rate over the objection and protest of the railroad company, contending for a rate of $5 per ton. Other illustrations might be made, but it is not necessary. The present question is not to be determined by such considerations.

The real question presented to the court is this: Do the complaints state facts sufficient to warrant the court in believing that the railroad companies will sustain a loss in transporting these forest products at the rates fixed by the railroad commission? We think not. We think the showing is insufficient to justify the court in granting an injunction pendente lite as against the rates fixed by the commission. There is another feature of this case that the court cannot overlook, on this motion for a temporary injunction, and that is this: The railroad commission is a commission created by law, authorized to take testimony, and make examination into all the mat-

ters relating to railroad rates. Now it appears in this case that the railroad companies did have a hearing before the commission; that testimony was introduced on the part of the railroad company and presented to the commission; that there was a hearing upon the case upon the merits; and that the commission has reached the result as expressed in its order as a matter of judgment, after a full and fair hearing upon the evidence in the case. There is, therefore, a presumption provided by the statute that the rates fixed by the railroad commission shall be deemed just and reasonable, and it is further provided that such rates shall remain in full force and effect until a final hearing.

There is, however, an objection urged that the railroad commission fixed its judgment in this case upon testimony that, under the decisions of the Supreme Court of the United States, ought not to have been considered, namely, the comparisons made by the railroad commission with respect to transportation of lumber and other forest products by other railroads and under other circumstances and conditions.

We do not understand that the railroad commission fixed these rates upon a matter of comparison with other railroads and their traffic. We understand from their report that they fixed these rates upon a determination that they are in and of themselves reasonable and just; that the comparisons made in the report were merely matters of evidence which the railroad commissioners had before them in determining what would be a reasonable rate for the length of road, for the amount of equipment and for the amount of capital invested in the railroads, and the other matters pertaining to cases of that kind.

There is another feature of these cases that may be noticed, and that is the fact that the railroad commission has presented to us a statement of the expenses of the Tonopah & Goldfield Railroad as compared with the Nevada Northern Railway. The two roads are in Nevada and have many features in common. It appears that the Tonopah & Goldfield Road is under very expensive management as compared with the Nevada Northern Railroad, and that it is very much in excess for substantially the same service. Such expensive management, under the circumstances, will not justify higher rates to pay expenses and dividends to stockholders.

These facts which have been presented to the court convince us that, upon the cases as presented to us now, the rates fixed by the railroad commission are reasonable and just, and ought to be fairly remunerative, and that, upon this showing, the restraining order should be discharged, and a temporary injunction denied; and it is so ordered.