SOUTHERN PAC. CO. v. RAILROAD COMMISSION OF CALIFORNIA.

(District Court, N. D. California, S. D. February 7, 1912.)

1. COMMERCE (§ 61*)—STATE RAILROAD COMMISSIONS—ORDER FIXING RATES—VALIDITY PRESUMED.

An order of a state railroad commission reducing class and commodity freight rates will be presumed to be reasonable, and not to interfere with interstate commerce, in the absence of a showing to the contrary.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 82; Dec. Dig. § 61.*]

2. PLEADING (§ 214*)—ADMISSION BY DEMURRER—SCOPE.

A demurrer admits the truth of all facts well pleaded, but the admission does not extend to mere deductions or opinions unsupported by the facts pleaded, nor to mere conclusions of law.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

3. CARRIERS (§ 18*)—STATE-MADE FREIGHT RATES—REASONABLENESS—PLEADING—REQUISITES.

To establish the unreasonableness of a state-made freight rate, a bill must disclose facts showing with reasonable definiteness, not only the present total value of the road affected, with the total gross revenue, but also the gross revenue from each class of business, interstate and local, freight, passenger, or other, and the proportionate property values devoted thereto, respectively; and not only should the gross operating expenses of the road appear, but also a proportionate application of such expenses to the different classes of traffic, freight, and passenger, so that the net revenue from each source may be thereby ascertained and the ultimate question determined as to the effect of the rates complained of upon the particular traffic affected thereby.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 19, 20; Dec. Dig. § 18.*]

4. CARRIERS (§ 18*)—STATE-MADE FREIGHT RATES—REASONABLENESS—PLEADING—SUFFICIENCY.

A bill is insufficient to show unreasonableness of state-made freight rates where it consists largely of matters of mere opinion and general conclusions, such as an averment that the rates are unjust and unreasonable; where, though the total present value of the road is stated, the portions assignable to intrastate traffic and to the particular traffic are not shown; where the values and operating expenses assignable to passenger and freight traffic are not segregated; where, though the gross operating expenses for one year are given, there is no apportionment thereof to intrastate business and interstate business nor between local freight traffic and local passenger traffic nor to the particular traffic; where, though it is alleged that the known loss resulting from the order will be a specified amount, no facts are stated to show how the result will be reached; and where, though it is stated that the complaining road's principal business between the points affected consists of interstate commerce and the road will be compelled to lower its interstate rates, it is not shown what part of the predicted loss will be on the traffic affected as distinguished from the general body of traffic.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 19, 20; Dec. Dig. § 18.*]

5. PLEADING (§ 8*)—CONCLUSIONS.

A bill is insufficient to establish invalidity of state-made freight rates as constituting an interference with interstate commerce where it consists largely of general averments as to the prospective effect of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rates without stating concrete facts from which such effect can logically or naturally result.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½; Dec. Dig. § 8.*]

6. COMMERCE (§ 13*)—INTRASTATE COMMERCE.

A state can regulate purely local or state commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 7; Dec. Dig. § 13.*]

7. COMMERCE (§ 48*)—STATE REGULATIONS—INTERFERENCE WITH INTERSTATE COMMERCE.

A state regulation of intrastate commerce is not invalidated through an indirect or incidental interference with interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 36–44; Dec. Dig. § 48.*]

8. CARRIERS (§ 13*)—FREIGHT—DISCRIMINATION—CONFORMITY TO STATE-MADE RATES.

Reduction of interstate freight rates to conform to valid state-made rates does not constitute an unlawful discrimination against the interstate traffic.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 13.*

What constitutes an unlawful preference or discrimination by a carrier under interstate commerce regulations, see note to Gamble-Robinson Commission Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

9. CONSTITUTIONAL LAW (§ 242*)—EQUAL PROTECTION OF THE LAW—RAILROAD FREIGHT RATES.

That freight rates between two points were reduced by a state commission as to complainant, but not as to a competing railroad, does not show a denial of equal protection of the laws as to complainant, though there is an identity of distance and similarity of service between the points, in the absence of a showing of the respective investments of the competing lines.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 691; Dec. Dig. § 242.*]

10. CONSTITUTIONAL LAW (§ 242*)—EQUAL PROTECTION OF THE LAW—RAILROAD FREIGHT RATES.

Mere failure of a state railroad commission to reduce freight rates as to competing lines at the same time does not constitute a denial of equal protection of the laws as to the road whose rates are first reduced.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 691; Dec. Dig. § 242.*]

11. CONSTITUTIONAL LAW (§ 242*)—EQUAL PROTECTION OF THE LAW—RAILROAD FREIGHT RATES.

Reduction of freight rates by a state railroad commission cannot be deemed a denial of equal protection of the laws because rates on a competing line are not reduced, unless the rates as reduced are unreasonable and confiscatory.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 691; Dec. Dig. § 242.*]

In Equity. Bill by the Southern Pacific Company against the Railroad Commission of the State of California. Bill dismissed.

H. C. Booth, G. D. Squires, and C. W. Durbrow, for complainant. Max Thelen and John M. Eshleman, for defendant.

VAN FLEET, District Judge. The bill seeks to enjoin the enforcement as invalid of an order of the respondent, the Railroad Com-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mission of the state, reducing certain class and commodity rates on freight moving between the port of San Pedro and the city of Los Angeles over the lines of complainant's railroad running between those points, so far as such rates apply to local or intrastate traffic. In answer to an order to show cause why an injunction pendente lite should not issue, the respondent has appeared and interposed a demurrer, both general and special, challenging the bill as wanting in equity and as lacking a disclosure of sufficient facts to warrant the relief prayed; and it is upon this demurrer that the questions presented arise.

The bill attacks the validity of the ordinance of the board upon three specific grounds: (1) That the rates fixed thereby are so unreasonably low as to be confiscatory, and that their enforcement will result in taking complainant's property without due process of law, in violation of the guaranties of the Constitution of the United States; (2) that the order, if enforced, will directly and necessarily interfere with interstate commerce, and is therefore in violation of the provision of the Constitution committing the power to regulate that subject wholly to Congress; (3) that, under the facts alleged as to the situation of certain competing lines of road and the circumstances disclosed under which the order was promulgated, its effect, if enforced, will be to deprive complainant of the equal protection of the law, in violation of the fourteenth amendment to the Constitution of the United States.

Counsel in their presentation of the case have followed the order and sequence of the objections as just stated, and it will therefore prove more satisfactory perhaps to follow the same order in discussing the questions raised by the demurrer for the purpose of considering the sufficiency of the bill.

## 1. As to Unreasonableness of the Rates.

Aside from the jurisdictional facts, and avoiding certain general averments as to the effect of the order repeated throughout the bill in various forms, and partaking more of the nature of conclusions than of ultimate facts, the pertinent features of the bill affecting the first ground of objection to the order of the commission are these: That complainant is a common carrier of freight and passengers, owning and operating connecting lines of railroad in the states of California, Nevada, Utah, Arizona, and other states and territories, and as such is engaged in both interstate and intrastate commerce. That, in connection with and as a part of its system, it was at the times mentioned in the bill operating the line of road affected by the order in question, described as "a certain line of railway within the state of California, between the city of San Pedro and the city of Los Angeles, known as and called the 'San Pedro Branch,' and was carrying over its said railway line freight and passengers under tariffs of rates, fares, and charges duly established, published and filed with said defendant," which tariffs of rates so filed are alleged to be fair, just, and reasonable. The proceedings leading up to the hearing before the respondent board, and culminating in the order complained of, are then stated, and the order of the board is set out in full, and it is alleged:

"That the rates fixed, established, prescribed and ordered to be published by defendant will reduce the rates and revenues received by your orator upon

the business carried by it on said San Pedro Branch to an amount of at least thirty per cent. (30%), which is the direct reduction provided for by the schedule of rates prescribed by defendant; and your orator alleges further that if the said reductions prescribed and ordered published by defendant are enforced, your orator's power and lawful right to charge and collect just, fair and reasonable rates for the transportation of freight on its said San Pedro Branch are denied to it; and that the said orders entered by defendant prescribe an unjust, unreasonable and unremunerative basis of rates and charges for services performed by your orator as aforesaid, and said orders if enforced will result in the confiscation of your orator's property, in violation of section 1 of article 14 of the amendments to the Constitution of the United States, and will result in the taking of your orator's property without due process of law."

That said rates "will not yield your orator a fair and reasonable return on the amount of money invested by your orator in said San Pedro Branch line railroad for the following reasons:

"The present value of the said San Pedro Branch, or the cost of reproducing the same, exclusive of rolling stock and excluding that portion of said branch and facilities necessary thereto which are within the Los Angeles Terminal limits, is at least the sum of fifteen million, nine hundred and twenty-three thousand, four hundred and eighty-seven dollars ($15,923,487); upon the said San Pedro Branch the detailed earnings and expenses have been carefully computed by your orator upon bases and formulæ prescribed by the said defendant for the months of April and October, 1910, which months were prescribed and designated by said defendant. These earnings, expenses, and taxes for one year, based upon the earnings of the said San Pedro Branch for the said months of April and October, 1910, are hereby set forth in the following statement:

| | |
|---|---|
| Total gross revenue for one year on San Pedro Branch | $746,776 32 |
| Total operating expenses, located and apportioned to said branch | 253,806 23 |
| Total taxes of said branch, being 4 per cent. of gross revenue.... | 29,870 05 |
| Total operating expenses, including taxes as above............. | 283,676 28 |
| Excess of revenue over operating expenses and taxes........... | 463,100 04 |
| Known loss on said branch by reason of order of defendant..... | 112,439 63 |
| Amount remaining........................................ | 350,660 41 |

"The percentage of return which this last-named amount would afford upon the value or cost of reproducing said San Pedro Branch ($15,923,487) would be 2.22 per cent."

It is alleged: That in conducting transportation on said San Pedro Branch, and in the administration of its business affairs with reference to its said San Pedro Branch, the same has been and is carried on in a prudent and economical manner, and yet, notwithstanding, its earnings from said branch line of railroad for the transportation of property or otherwise have not yielded a fair or just return on the value of its property, and will not, under the rates prescribed by defendant, yield a fair and just return upon the value thereof.

"That the principal water carriers competing with your orator for transcontinental traffic to and from said city of Los Angeles at the ports of San Pedro and San Diego are the Pacific Mail Steamship Company, the American-Hawaiian Steamship Company, and the California Atlantic Steamship Company, known as the 'Bates & Chesebrough Line,' and that large amounts of the transcontinental traffic moving into or out of said ports to and from said city of Los Angeles is transported under and by virtue of through rates, fixed and established by the owners or managers of said steamship lines, and is moved on through bills of lading to and from said city of Los Angeles in competition with the rates fixed and established on its lines by your orator and by the Interstate Commerce Commission; and your orator and said Steamship Companies are now competing with each other and carrying said traffic at less than reasonable rates and at the lowest rates that would re-

numerate either or any of them for the service performed." That the said steamship companies "and numerous other steamships owned and operated by other persons and companies transport freight to and from points outside the state of California through the ports of San Pedro and San Diego to and from said city of Los Angeles on through bills of lading, and that in the case of them and each of them they pay your orator's local rates to and from San Pedro, or the proportional rate of the Atchison, Topeka & Santa Fé Railway Company to or from said port of San Diego, or from the port of Redondo, thus making such local or proportional rate a part of the entire charge for through shipment. That, if said orders entered by defendant as set forth herein are permitted to go into effect, the said steamship companies will make no change in the through or transcontinental rates now assessed and collected by them, but the said steamship companies will pay a less or lower local or proportional rate between the points hereinbefore named, and thus a portion of the sums now collected from traffic carried by your orator between said cities of San Pedro and Los Angeles will be given to said steamship companies; and therefore your orator alleges and charges that the effect of said orders so made and entered will be either to force your orator to reduce its freight rates from points outside the state of California to and from said city of Los Angeles, or to compel your orator to yield to said steamship companies a large portion of its revenues annually without any benefit whatever to your orator's patrons, the shippers, merchants, and manufacturers of the city of Los Angeles. And your orator further alleges that for these reasons the defendant in entering its said orders misconceived the law and transcended and exceeded its jurisdiction and powers, and in thus attempting to appropriate the property of your orator attempted to deprive your orator of its property without due process of law, and in violation of the Constitution and laws of the United States. That many steamer and boat lines, as well as many so-called tramp vessels, now land at said port of San Pedro and discharge cargoes which have been shipped from the Atlantic seaboard, from European ports, from Puget Sound ports, from ports on the Columbia river, and from foreign and interstate points and ports, destined for said city of Los Angeles, and that, after unloading at said port of San Pedro, said steamer and boat lines and so-called tramp vessels take cargo from San Pedro for said ports, which cargo has been transported by your orator from said city of Los Angeles to said San Pedro. And your orator further alleges that, if the decisions and orders of said defendant hereinbefore referred to shall be permitted to go into effect, a large part of this traffic, for which your orator and said steamer and boat lines are now competing, will be diverted from your orator's rail lines to the said steamer and boat lines and tramp vessels, and great, irreparable damage will thereby be inflicted upon your orator's intrastate and interstate rail lines, and your orator will be compelled to reduce its intrastate and interstate rates in order to meet said competition and retain said traffic, or, failing to do that, your orator will lose said traffic and be deprived of the revenue now accruing therefrom."

These are the averments of the bill which may be considered as at all material to the objection that the rates fixed by the order complained of are of the character alleged; and the question is, Do the facts alleged make a case calling for relief?

[1] Indulging, as we must, the presumption that the order is a proper and lawful regulation, the facts alleged must be such as to overcome this presumption and enable the court to say as matter of law that, if sustained, they would entitle complainant to the relief prayed.

[2] And in this respect, while the demurrer admits the truth of all facts well and properly pleaded, this admission does not extend to averments in the nature of mere deductions or opinions of the pleader unsupported by the underlying facts appearing, nor to averments which are purely in the nature of conclusions of law. In other words,

the averments that are to be deemed admitted must be averments of those ultimate facts essential to the maintenance of the right asserted, and such facts must be stated with sufficient distinctness and precision to distinguish them from mere conclusions of law or fact drawn from the pleader's mind; otherwise, under the familiar rule that the pleading is to be construed most strongly against the pleader, it will be regarded as insufficient.

[3] Applying these principles to the present case, as the rates sought to be avoided apply to a road engaged in both interstate and local, or intrastate, business, and in the carriage of both passengers and freight, it is essential, to enable the court to say that those rates are, as alleged, confiscatory, that the bill disclose facts showing with reasonable definiteness, not only the present total value of the road affected, with the gross revenue derived therefrom from all sources, but it should show as well the gross revenue from each class of business, interstate and local, freight, passenger, or other, and the proportionate property values devoted thereto, respectively; and not only should the gross operating expenses of the road appear, but also the proportionate application of such expenses to the different classes of traffic, freight and passenger, carried over the road, so that the net revenue derived from each source may be thereby ascertained and the ultimate question determined as to the effect of the rates complained of upon the particular traffic affected thereby. M., K. & T. Ry. Co. v. Love (C. C.) 177 Fed. 493; Southern Pacific Co. v. Campbell (C. C.) 189 Fed. 182; Central of Georgia Ry. Co. v. McLendon (C. C.) 157 Fed. 961.

In the first of these cases, in speaking of the matters necessary to be alleged and found, it is said:

"When the railroad within the state is used in both interstate and local commerce, it is necessary next to determine what part of its value should fairly be considered as devoted to each use separately, because obviously the company should not exact such excessive rates for local traffic as will also produce a return upon a value employed in a business over which the state has no control. Neither class of traffic, interstate or local, should be made to bear a burden caused by paring the rates on the other to the quick. It is generally agreed that, given the entire value of the railroad property in the state, it is fair to apportion it among the different kinds or classes of business upon a revenue basis; that is to say, in proportion to the gross revenue produced by them respectively. And a like rule applies when the questions involved require separate consideration of the freight and passenger business. In this way will be found the fair proportion of value devoted to each particular use, upon which the owner is entitled for such use to a reasonable return."

[4] When these principles are applied to the present bill, I think it is at once apparent that it fails to put the court in possession of substantive facts sufficient to enable it to sustain the view that the rates are confiscatory. It consists too largely of matters of mere opinion, and general conclusions, more in the nature of assertions or predictions of the effect the rates will have than ultimate facts from which such effect may be deduced. Of course, the general averment that the rates are unjust and unreasonable, if left unsupported by the facts, is not sufficient to impress them with that character. That is a conclu-

sion which is not, as we have seen, admitted by the demurrer. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 401, 14 Sup. Ct. 1047, 38 L. Ed. 1014. There must be something more specific than that. While the total present value of the road affected is alleged, no statement is made to show what part of this total value is assignable to state traffic as distinguished from interstate business, nor what proportion of such value is properly to be assigned to the particular traffic affected by the rates fixed as distinguished from other traffic. Nor is any attempt made to segregate the values properly assignable to passenger traffic as distinguished from freight traffic. The same defects are apparent in the statement of operating expenses and charges. The gross operating expenses for one year are given, but no facts are alleged to show what proportion of these expenses are chargeable to state business as distinguished from interstate business; how much to local freight traffic as distinguished from local passenger traffic; nor how much to the particular traffic affected by the order in question. It is alleged that the "known loss on said branch by reason of the order of the defendant will be $112,439.63," but there are no sufficient facts to show how this result is to be arrived at. Elsewhere it is averred that complainant's principal business between the points affected consists of interstate commerce, and that it will be compelled to "lower all its interstate rates upon freight, merchandise and commodities moving between said cities of San Pedro and Los Angeles, and reduce said rates conformable to those assumed to be charged by said defendant;" but there is no averment as to what portion of the predicted loss will be on the traffic affected by the order as distinguished from the general body of traffic. These omissions leave the further averment in the bill that the enforcement of the order will reduce complainant's income on the investment affected to but 2.22 per cent., standing as a mere conclusion unsupported by the facts alleged.

These considerations do not ignore the difficulties encountered and recognized by the courts, where a property is devoted to both interstate and local commerce. in attempting. for the purposes of pleading or proof, to segregate definitely either investment, income, or expenses as applicable to each character of traffic; but, while the greatest certainty is not required, there are well-understood bases for giving fairly accurate approximations, and such at least it is required of a party to allege in his pleading that reasonable certainty may be had before granting injunctive relief in such a case.

The bill in its general structure is much akin to and cannot be distinguished in material substance from that filed for a like object in Southern Pacific Co. v. Campbell, supra, where, in sustaining a demurrer to the bill as not stating a case for equitable intervention, Judge Bean says:

"Again, the complainant does not state the amount of interstate traffic which will be affected by the order, nor the cost of service, nor the value of the property devoted to such business. It sets out the value of the entire property, the gross receipts and disbursements for both state and interstate business for a number of years prior to the date of the order, the amounts received from state and interstate business, freight and passenger, during

the year 1909, and approximate percentage of tonnage affected by the order sought to be enjoined, assuming, as I take it, that both local and interstate traffic are affected by such order. There is no allegation as to the cost of conducting state business as distinguished from interstate business, and no statement of the difference between passenger and freight expenses."

As stated in San Diego, etc., v. National City, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154:

"Judicial interference should never occur unless the case presents, clearly and beyond all doubt, such a flagrant attack upon the rights of property under the guise of regulations as to compel the court to say that the rates prescribed will necessarily have the effect to deny just compensation for private property taken for public use."

## 2. As to Interference with Interstate Commerce.

[5] The averments of the bill bearing directly upon this point are, in substance, these: That complainant is engaged in the carrying of freight and other commodities, not only between Los Angeles and San Pedro, but from other points throughout the state, and by its connecting lines, both by rail and water from points throughout other states; that the tariffs covering the movement of its interstate freight have been regularly posted and filed with the Interstate Commerce Commission as required by law; that its principal business between the port of San Pedro and Los Angeles consists of interstate traffic, and that as a carrier of such traffic it is subject to the sole supervision and control of said Interstate Commerce Commission; that in carrying freight between San Pedro and Los Angeles the same cars and other rolling stock are used; and the freight, both local and interstate, is handled in the same identical manner, and that it is impossible to segregate local freight from through freight for the reason that the cars in which it is moved carry both interstate and local freight and frequently in the same car; that it is the duty of complainant under the law to serve all localities and shippers alike and without discrimination, and it has therefore made its tariffs between said points, both local and interstate, on a uniform basis, and it is averred "that, as the circumstances and conditions under which its interstate and intrastate business is transported are identical, there is no principle under which your orator may lawfully apply to local shipments in either direction lower or different rates" on local freight than to interstate shipments, and therefore, if complainant is compelled to obey the order of the respondent, in order to avoid unlawful discrimination, it will have to lower all its said interstate rates to conform to the rates fixed by said order. And it is alleged that by reason of these facts the necessary effect of the order of said commission "is a regulation of interstate commerce in violation of the exclusive powers granted to Congress by the Constitution of the United States."

These features of the bill are open to the same criticism as those applying to the question of unreasonable rates. They consist largely of general averments as to the prospective effect of the order of the commission without stating concrete facts from which such effect would logically or naturally result. It is not readily to be perceived from anything stated in the bill just how such results as those pre-

dicted are to follow, and counsel have not in their argument or briefs attempted to put their finger upon the facts which would necessarily have such effect.

[6] It is beyond question that the state has the right to regulate purely local or state commerce (Stone v. Farmers' L. & T. Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; Covington, etc., Bridge Co. v. Kentucky, 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962; Reagan v. Farmers' L. & T. Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819); and by the terms of the order in question its operation is made to apply solely to intrastate traffic. As the order of the commission is presumed to be a valid and proper regulation until the contrary appears, this presumption must be held to cover its operation in the particular here involved.

[7] While a state may not competently invade the domain of Congress by directly undertaking to regulate interstate commerce, yet, having the undoubted power to regulate its internal commerce, it may and not infrequently does adopt measures to that end which may exert a modifying effect upon interstate rates without thereby transcending the rightful limits of its authority. It is the adoption of regulations which directly and necessarily interfere with interstate commerce which is denied to it by the Constitution; not such regulations as merely in an indirect or incidental way work that result. As stated by Judge Wolverton in O. R. & N. Co. v. Campbell (C. C.) 173 Fed. 957:

"So, if it be that the local state rates as fixed and regulated by the State Railroad Commission on these commodities unsettle in some way previously fixed transcontinental or interstate rates, that circumstance does not render the state rates invalid as an interference with interstate commerce."

The averments of the bill, as I read them, do no more than bring the case within this doctrine. Under the facts stated, the order of the commission may and probably will work some modification in the traffic arrangements between complainant and its connecting interstate lines, both of rail and water carriage, and to some extent affect their interstate rates; but that result will not necessarily militate against the lawfulness of the order. As stated by Judge Brewer in Ames v. U. P. R. Co. (C. C.) 64 Fed. 172:

"Neither can I understand how the reduction of local rates as a matter of law interferes with interstate rates. It is true that the companies may, for their own convenience, to secure business, or for any other reason, rearrange their interstate rates, and make them conform to the local rates prescribed by the statute; but surely there is no legal compulsion. The statute of the state does not work a change in interstate rates, any more than an act of Congress prescribing interstate rates would legally work a change in local rates. Railroads cannot plead their own convenience, or the effect of competition between themselves and other companies, in restraint of the otherwise undeniable power of the state."

It is said, in effect, that the local rates on the line affected are so interwoven with and dependent upon the transcontinental rates both by rail and water by which complainant is affected that confusion is bound to result, and that the rates fixed by this order will necessarily

be applied to commerce which is not local. But, if that be material, there is nothing alleged to make that fear any more likely of realization here than in any other instance of a difference between local and through rates. Moreover, that is a question of operation, and not of legal effect. The fact that a rate may be mistakenly misapplied is not an argument against its validity.

[8] It is further claimed that the necessary effect of the enforcement of these rates will be that complainant must either lower its interstate rates to meet the reduction worked by this order, or be guilty of an unlawful discrimination as against its interstate traffic, and render it liable to prosecution therefor. But this I take to be a clear misapprehension of the law as to illegal discrimination. As stated by Judge Morrow in Woodside v. Tonopah & G. R. R. Co. (C. C.) 184 Fed. 358, 360:

"A rate fixed by a state railroad commission for intrastate traffic, if just and reasonable in and of itself, cannot be held to be unlawful and discriminatory because it may conflict with some rate fixed by the railroad company for interstate traffic. Upon adjustment the latter rate must yield."

The case of Shepard v. Northern Pacific Ry. Co. (C. C.) 184 Fed. 765, relied upon by complainant, was decided upon a state of facts so wholly and essentially different from those appearing here that it has no just application to this case. There the orders of the commission under the acts of the Legislature worked a drastic and sweeping change in the whole field of local rates throughout the entire state, both freight and passenger; and Judge Sanborn, under the facts there appearing, held that their effect upon the commerce of the jobbing centers, not only of Minnesota, but of those immediately adjacent in other states, was so material as to necessarily affect interstate traffic. To quote his language:

"The acts of the Legislature of Minnesota and the orders of its commission are so general and so far-reaching in their effect that there is no doubt that they unavoidably affect the interstate commerce of the companies. * * * Each of the acts and orders challenged has the natural and necessary effect substantially to burden and directly to regulate interstate commerce, to create undue and unjust discrimination between localities in Minnesota and those in adjoining states, and it is unconstitutional and void."

See, also, in this respect Arkansas Rate Cases (C. C.) 187 Fed. 290; Louisville & Nashville, etc., R. Co. v. Siler (C. C.) 186 Fed. 176.

3. As to the Objection that the Order Denies Complainant the Equal Protection of the Law.

[9] This proposition is based upon these facts: In the complaint filed before the respondent which resulted in the making of the order in question, the San Pedro, Los Angeles & Salt Lake Railroad Company, operating a line between the same points, was joined as a defendant with complainant, and a reduction of the existing rates between said points as to both defendants was asked, and at the subsequent hearing evidence was taken as to the propriety of the rates being charged by both of those defendants. In making the order here attacked the commission made it applicable to the complainant alone,

reciting in its order that sufficient evidence had not been adduced to justify a decision as to the Salt Lake Line, but providing as to the latter:

"That company, if it is so minded, may meet the rates of the Southern Pacific Company herein established. If it does not desire to do so, it is directed to notify this commission of that fact within ten days from the date hereof, whereupon we shall take the additional steps necessary to arrive at a conclusion as to what rates should be charged by this company."

It does not appear whether the Salt Lake Line has acquiesced in such rates, but it is alleged, in substance, that the lines of the Southern Pacific Company and those of the Salt Lake Road between the two terminal points affected by the order are practically of the same length, that they are operated in the same manner and haul the same kind of freight, that the character of service is identical, and that the value of the service is also practically identical; and it is alleged that, under these circumstances, the order of the commission in fixing the rates over the complainant's line, while at the same time permitting the Salt Lake Line to continue its present rates, amounts to a deprivation, through the operation of the commission's order, of the equal protection of the law as to complainant. Similar averments are made as to the line of the Atchison, Topeka & Santa Fé Railway Company running between the city of Los Angeles and the port of Redondo; the theory of complainant, as evidenced by its bill, being that the failure of the commission to regulate by the same order the rates upon the two competing lines mentioned resulted in an unlawful and unjust discrimination against it.

But these facts do not disclose a denial to complainant of the equal protection of the law as that term is used in the Constitution. The mere identity of distance and similarity of service alleged by complainant to exist as between it and its competitors are not sufficient as a foundation upon which to base such a conclusion. Any attempt to state the respective values of the property invested in the competing lines is wholly lacking, and such fact must be made to appear as a necessary basis upon which to predicate the present contention. Its absence leaves no sufficient showing from which to deduce that the rates on those lines should necessarily be the same as those applicable to the complainant. As stated in Smyth v. Ames, 169 U. S. 466, 546, 18 Sup. Ct. 418, 434 (42 L. Ed. 819):

"The basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. * * * What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth."

[10] But furthermore to say, for the reasons stated in the bill, that the commission has by its action denied the complainant the equal protection of the law, would be to hold that that tribunal has not the power to regulate its own proceedings and the order and manner in which it will dispose of the business coming before it. There is noth-

ing in the law requiring that it should have determined the question before it as to the rates of the codefendant of complainant at the same time and in the same order as those of the latter, and the court cannot presume that the reason given for its failure to do so was other than what it states; nor is there anything in the law which prohibited it from proceeding to consider the complaint made against the complainant and its codefendant without bringing in as a party the Santa Fé Line, conceding its power so to do. It certainly will not be presumed that it was its purpose to deal unjustly or discriminatingly with complainant to its injury, nor does its order so indicate; to the contrary, the express implication is that, if the Salt Lake Line does not conform to the rates fixed for complainant, the case against it will be proceeded with in due course.

The case is not at all like Cotting v. Kansas City Stockyards, 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, cited by complainant. There the Legislature had passed an act undertaking to classify the business of operating stockyards within the state, and had made a classification which, without any just or reasonable foundation in the circumstances, put the complaining stockyards company in a class by itself, with burdensome and unjust regulations as applied to it. The act was held void as having no reasonable ground under the law upon which to stand as a proper classification for the purpose; and that was all that was decided in that case. The order of the commission under consideration is in no proper sense an act of classification, but, if it were, the facts alleged are not sufficient to determine that it was an unjust one. Home T. & T. Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176.

[11] But, finally, there is another answer to this objection, and that is that the complainant is not in a position to claim that it has been unjustly discriminated against or denied the equal protection of the law until it has shown that the rates imposed upon it are unreasonable and confiscatory (Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; St. L. & S. F. R. Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; Reagan v. Farmers' L. & T. Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; San Joaquin, etc., Co. v. Stanislaus County [C. C.] 90 Fed. 516); and this, as we have seen, its bill does not establish.

These considerations cover all the points pressed upon the attention of the court material to be noticed, and it results from what has been said that the demurrer should be sustained.

Accordingly the demurrer is sustained, the temporary restraining order vacated, and the bill is dismissed.